Ruggles, Nourse, Mason & Co., Plaintiffs in Error, *vs.* Swan-
wick & Duffy, Defendants in Error.

ERROR TO THE DISTRICT COURT OF SCOTT COUNTY.

It may always be shown in defence to an action on a note in the hands of original parties, that
it never was perfected by delivery, or that there was no consideration moving between the parties
to support it.

When any contract between parties is reduced to writing, it must be proven by the writing, and
cannot be varied by any previous or contemporaneous verbal agreements or understandings: but
where there is a direct reference in the writing, to a verbal agreement, the latter may be proved
even though the effect of it be to add material terms and conditions to the writing. .

Where a writing evidently appears to express only some part of an agreement entered into be
tween the parties, it seems it would be admissible to prove the other parts of the agreement on
which it is silent.

## Points and Authorities of Plaintiffs in Error.

I.—The Court below erred in admitting the parol testimony
concerning the contracts and agreements, and the assignment
mentioned in the answer, after the note (sued on) had been
offered in evidence, and when the Plaintiffs offered to show
that the other contracts were also reduced to writing. *Part 2,
Cow. & Hill's Notes to Phil. on Ev., pages* 593-94-95, *and cases
there cited.*

1st. For the reason that the same tended to vary the terms
of the note which was already in evidence at the time of of-
fering the parol testimony objected to. (*See testimony*) *Paper
Book, folios* 47, 48, 66, 67, 85. By which testimony it was
attempted to be made to appear that the instrument sued on
as a note, was nothing but a mere memorandum; for which
purpose the testimony was inadmissible. *See Chit. on Con.,
9th Amer. Ed., pages* 110, 111, 105; *McComb, Simpson & Co.
vs. Thompson,* 2 *Minn. R.,* 146.

2d. For the reason that said parol testimony tended to show
an assignment of the book accounts therein mentioned to the
Plaintiffs in payment of the note sued on, in palpable contra-
diction of the assignment itself, which appears upon its face

to be an assignment to Thomas J. Galbraith. *See P. B.,* *folios* 45-6-7, 50, 59; *see also assignment and agreement.*

3d. For the reason that said parol testimony was intended to, and did vary the terms of the written agreement of the parties to said assignment, concerning the distribution of the proceeds of the accounts assigned, in this : that it tended to create an agency on the part of Galbraith for the Plaintiffs, wholly unknown to either of the writings. Such testimony is incompetent to connect an agency with a person making a written contract as principal therein. It must appear by the contract itself in what capacity the parties thereto acted. *Story on Agency, pp.* 184-85-86, *and notes, with cases there cited, to-wit* : *Stackpole vs. Arnold,* 11 *Mass. R.,* 27, 29; *Bradlee vs. Boston Glass Manufactory,* 16 *Pick. R.,* 347, 350; *Alfridson vs. Ladd,* 12 *Mass. R.,* 173, 175; *Savage vs. Rice,* 9 *N. H. Rep.,* 263, 269, 270; *Rice vs. Gove,* 22 *Pick R.,* 158, 161; *Minard vs. Reed,* 7 *Wend. R.,* 68; *Pentz vs. Stanton,* 10 *Wend. R.,* 271; *Spencer vs. Field,* 10 *Wend. R.,* 87; 4 *Kernan R.,* 325-26; *also Story on Agency,* 190, 202, 203.

The errors here complained of could not be cured by the subsequent instructions of the Court, " that if the jury should find the written and parol testimony to conflict, that the written must prevail." *See* 2 *Gra. & Wat. on New Trials, p.* 612 *to* 617, *inclusive—*620 *to* 631, *inclusive—*633, 644, 645, *with intervening notes and cases there cited; see also, opinion of Flandrau, J., in Bond vs. Corbet,* 2 *Minn. R.,* 258.

II.—The Defendants were guilty of misconduct in suppressing the written agreement of the parties concerning the distribution of the said assigned property, until after they had offered, and caused to be admitted, parol testimony of its contents, and contradicting the same. (*See F. B., folios* 88, 89;) *Cow. & Hill's Notes to Phil. on Ev., part* 1, *pages* 435, 456; 1 *Gra. & Wat. on New Trials,* 55-6-7.

III.—The verdict was against the law and the evidence given on the trial.

1st. The verdict does not conform to the law, in this : that it is not responsive to the issues presented by the pleadings.

The issues formed and tendered by the answer are inconsistent with each other. Consequently the verdict should

have been special and responsive to each, or to such of them as would have disposed of the action. _See_ 3 _Gra. & Wat. on New Trials, pages_ 1392-93-94, _and cases there cited._

2d. The verdict was against all the legal evidence adduced in the case.

The testimony of Leonard, Sanborn and Duffy, in all the material parts thereof, was contradictory of, and in variance of the contracts and agreements of the parties thereto, as evidence by the writings themselves, and should have been wholly disregarded by the jury under the instructions of the Court. _Cow. & Hill's Notes, part_ 2, _page_ 398; _part_ 1, 456.

Points and Authorities of Defendants in Error.

I.—The complaint having alleged the particular consideration of the note to be a " debt due the Plaintiffs in their partnership name and capacity" were bound to prove it, and in their attempt to prove it, having introduced in evidence part of the transaction in which the alleged consideration originated, and of which it consisted, it was for this reason alone competent for the Defendant to introduce in evidence the whole transaction, and the attendant circumstances. And the whole transaction having been given in evidence conclusively proves there was no consideration for the note, or delivery thereof to the Plaintiffs. 2 _Greenl. Ev., sec._ 173 ; _Benson vs. Couchman_, 1 _Code, R._ 119 ; _Hugh vs. Wheeler_, 8 _Cow._, 77 ; _Bayly vs. Freeman_, 4 _John._, 280 ; _Lansing vs. Kellip_, 3 _Cai._, 286 ; _Sexton vs. Jackson_, 10 _John._, 418.

II.—If the parol evidence is admissible for any purpose, it was properly received by the Court, and if not admissible for all purposes, the Plaintiffs should have required the Court to limit its application in charging the jury.

1. The parol evidence is admissible to show that the note never had any legal existence or binding force, either, first, for want of consideration, or, second, for want of due execution or delivery.

2. The parol evidence is admissible to show that the " debt due the Plaintiffs," for which the note is alleged to have been given, was satisfied, paid, and discharged. 1 _Greenl. Ev., secs._

283, 284, 527, 522, 302 ; 4 *Phil. Ev.*, 590, 592, 533, 617 ; 2 *Greenl. Ev.*, sec. 173 ; *Cow. and Hill's Notes*, 938, 1003 ; 4 *Phil. Ev.*, 578 ; 6 *Wend.*, 615 ; *Cow. and Hill's Notes*, 969, to 1 *Phil. Ev.*, 551 ; *Goddard vs. Cotes*, 2 *Farq.*, 442 ; *Devlin vs. Hill*, 2 *Farq.*, 434 ; 17 *Peters*, 161 ; *Clark vs. Goddard*, 10 *Wend.*, 310 ; 11 *do.*, 533 ; *Powers vs. Russell*, 13 *Pick.*, 69, 75, *and citations.*

III.—The issues raised by the Defendants' answer are all in substance denials of allegations in the complaint (1) of any consideration, (2) of any delivery, with the transaction and circumstances showing how the note originated and got into the hands of the Plaintiffs ; and (3) the complaint having made the negative allegation that the note "had not been paid," the answer makes the affirmative statement, as a defence, that the note was "fully paid, and discharged, and satisfied," at the very time of its inception, by the transaction which the Plaintiffs allege and attempt to prove to have been the consideration of the note ; and no evidence was offered of any payment, discharge, or satisfaction of the note, other than such as goes to the consideration and delivery.

IV.—The rule that parol evidence cannot be received in evidence to contradict or vary the terms of a written contract, is limited in its application to the contract which is the subject of litigation, and does not apply to written evidence offered to support or defeat the written contract. *Cow. and Hill's N. to Phil. Ev.*, 1436-8.

V.—The jury having found a verdict " for the Defendants," such a verdict is a finding for the Defendants on all the material issues ; although a finding either that there was no consideration for or delivery of the note, would be sufficient in a special verdict to entitle the Defendants to judgment ; and a finding of a special verdict for the Defendants that the note was paid, and discharged, and satisfied, as alleged in the answer, would have been a sufficient finding to entitle the Defendants to judgment. *Comp. Stats.*, 561, secs. 34, 35 ; 1 *Ld. Ray*, 324 ; 3 *Salk.*, 372 ; 5 *Ohio*, 227 ; 9 *do.*, 131 ; 21 *Wend.*, 90, 19 ; 13 *do.*, 425 ; 6 *do.*, 272 ; 3 *do.*, 667 ; 9 *do.*, 650 ; *Arch. N. P.*, 283 ; 1 *Doug.*, 376 ; 2 *do.*, 730 ; 6 *T. R.*, 691 ; 5

*John.*, 435 ; 11 *John.*, 985 ; 1 *Bos. and Pul.*, 329 ; 1 *Arch. Pr.*, 219, *and citations.*

JOHN H. BROWN, Counsel for Plaintiffs in Error.

HENRY HINDS, Counsel for Defendants in Error.

*By the Court*—FLANDRAU, J.—The firm of Litchfield & Stombs sold a stock of goods to the Defendants, Swanwick & Duffy, for which the latter gave their promissory notes for $3,300. The firm of Jewet & Root, creditors of Litchfield & Stombs, considering the sale of the goods fraudulent, had them attached in the hands of Swanwick & Duffy, which created litigation, and embarrassed Swanwick & Duffy in their business of selling the goods, and caused them damage. The firms of Farrar & Follet, Callendar, Flint & Co., and the Plaintiffs, were also creditors of Litchfield & Stombs, and were desirous of having the attachment removed and the debts of Litchfield & Stombs compromised and settled. With this view, Litchfield & Stombs, the Defendants, and the creditors of Litchfield & Stombs, met in the town of Shakopee and made an arrangement in substance as follows : 1. Litchfield & Stombs turned over their assets to their creditors, consisting of the notes of Swanwick & Duffy, some other notes, and their book accounts. 2. The assets, it was discovered, would only pay a percentage of 76-100 upon the dollar of their debts. The three notes of Swanwick & Duffy to Litchfield and Stombs were delivered up and destroyed, and in lieu thereof Swanwick & Duffy made a note directly to Callendar, Flint & Co., for $2,192 78, the amount of their claim at 76 per cent.; and one to Farrar & Follet, of $1,047 15, the amount of their claim at the same rate, payable at a future day,—Ruggles, Nourse, Mason & Co., and Jewet & Root taking for their share of the assets an assignment of the book accounts and some small notes against customers of Litchfield & Stombs. 3. The Defendants having sustained damage by reason of the attachment, were to be allowed what the book accounts realized beyond a certain sum, and twelve per cent. discount on all sums collected on them before a certain day.

4. The negotiations for this settlement had been pending for about a week before it was consummated.  At one stage of the negotiations the defendants had, in expectation of the book accounts being assigned to them, made out two promissory notes, one to Jewet & Root for $966 47, and the other to the Plaintiffs, being the one in contest in this action; but the settlement took another turn, and the Plaintiffs and Jewett & Root took the book accounts as their portion, subject to the interest of the Defendants in the avails, as above stated; and these notes were never delivered, except that they were left with the agents of the Plaintiffs as memoranda, indicating the amounts that were to be paid out of the avails of the book accounts, to the Plaintiffs and Jewet & Root, and the discounts to be paid to the Defendants, &c., and were to be given up at their due dates, without payment.  One of them was so given up, but the other was given to the attorney for the Plaintiffs, who commenced suit upon it.

The only writings connected with this settlement were two: 1. An assignment of the book accounts to Thomas J. Galbraith, written in the books, which recited that they were to be applied to the payment of the debts of Litchfield & Stombs, according to the conditions of a certain settlement heretofore made between the firm of Swanwick & Duffy, signed by Litchfield & Stombs, and consented to by Swanwick & Duffy.

The other writing is signed by Galbraith, in which he agrees to take the book accounts, &c., collect them, and appropriate the proceeds to the payment, first, of the note made by the Defendants to Jewett & Root for $966 45; second, the note in suit here made to the Plaintiffs.  Galbraith accepts the book accounts, &c., at the value of $1,586 88, " which sum is allowed as a credit on the notes aforesaid in the order and in the amounts in which the same is collected, at the rate of twelve per cent. per annum discount on the time from which the money is received, until the due date of the notes."  That after these notes are paid, the balance is to be appropriated to the note of the Defendant, given to Farrar & Follet for $1,047 15.

This paper is consented to by Swanwick & Duffy and Litchfield & Stombs.

The Plaintiffs make a question on the authority of Galbraith, he having been appointed to represent the Plaintiffs by Mr. Brown, who was their attorney. But this question we think is settled by the act of the Plaintiffs in bringing suit upon the note left with him ; they ratify his acts by so doing.

The Defendants set out in their answer all the facts above detailed, and were allowed to prove them under the objection that the settlement was reduced to writing. Both writings were afterwardss received in evidence, and the Court charged the jury that if the parol testimony conflicted with the written, the latter must govern.

The question is, whether the evidence offered by the Defendant to show that the notes were never in fact delivered, and that they had no consideration, was properly received.

It will be observed that the only liabilities of the Defendants were their debt to Litchfield & Stombs of $3,300, and that they claimed damages of their creditors, which reduced it still lower. That when it was discovered that the assets of Litchfield & Stombs would only pay 76 per cent. on their debts, the Defendants took up their three notes then outstanding, and gave new notes to two of the creditors, Callendar, Flint & Co., and Farrar & Follet, for the amount of their claims at 76 per cent., which both reached the sum of $3,239 93. This arrangement fully satisfied these two creditors, and at the same time amounted to within $60 07 of the sum the Defendants owed to Litchfield & Stombs. The other two creditors, Messrs. Jewet & Root and Ruggles, Nourse, Mason & Co, were then left to the book accounts for their pay, which they accepted. That part of the assets being worth, if all collected, $2,700, but being received at the estimated value of $1,586 88. The claims of these two last creditors at 76 per cent. amounted to $1,553 10, as follows : That of Jewet & Root to $960 45, and that of Ruggles, Nourse, Mason & Co. to $592 65. There was no reason why the Defendants should assume these debts. They had already assumed the full amount of their liabilities within $60 07. The Defendants had previously made out their notes for the several amounts due to these two firms, on the supposition that they were to take the book accounts and assume the debts.

When, however, it was determined that the creditors should take the accounts themselves, in payment of their claims, and that the Defendants should be compensated for their damages, by receiving 12 per cent. discount on what should be collected before the claims of the creditors fell due, and all the surplus after they were paid, these notes, of course, were not delivered, but being for the exact amounts due each creditor, and also indicating the times when these demands fell due, they were allowed to remain with Mr. Galbraith as memoranda upon which to regulate the administration of the assets as they were converted into money.

It may always be shown in defence to an action on a note, in the hands of original parties, that it never was perfected by delivery, or that there was no consideration moving between the parties to support it. It is equally well settled, that when any contract between parties is reduced to writing, it must be proven by the writings, and cannot be varied by any previous or cotemporaneous verbal agreements or understandings.

The writings in this case do not pretend to record the whole transaction. They refer simply to that part of it which relates to the claims of Jewet & Root, Ruggles, Nourse, Mason & Co., and the damages of the Defendants from the attachment, and provide the means by which these claims were to be paid. The assignment in the books refers directly to the settlement of the parties out of which the assignment grew, and a part of which it is. The second paper, signed by Mr. Galbraith, is but part of the first. The one assigns, the other accepts the assignment, and provides for the disposition of the assigned property. They both form part of the whole transaction by which the estate of Litchfield & Stombs was distributed among their creditors, and cannot be resorted to intelligently for any purpose, without reference to the settlement which forms the basis upon which they were made. When the whole arrangement is placed before the Court it is quite easy to understand the meaning of the writings, and to give them their whole force and effect, at the same time allowing the truth to appear in relation to the origin and purpose of the note sued upon. The verbal testimony in no way contradicts or varies the writings; it simply furnishes the

whole of the transaction of which the writings form a part and are dependent upon for their meaning and just application. It shows these pretended notes, referred to in the writing, never had either consideration or delivery to support them as claims 'against the Defendants; and also that the statement in the writing signed by Galbraith, in which he takes the books, notes, &c., at $1,586 88 was a payment and satisfaction, of the very debts for which these notes were originally drawn, at the time the Defendant proposed to assume the payment of them.

Where there is a direct reference in a writing to a verbal agreement, the latter may be proved, even though the effect of it be to add material terms and conditions to the writing. 2 *Cow. and Hills' Notes to Phil. Ev.*, 519 ; *Com'rs vs. McCalmont*, 3 *Pennsylvania R.*, 122 ; *Couch vs. Meeker*, 2 *Conn. R.*, 305. The assignment to, and acceptance by Galbraith, are as one instrument; they refer to the settlement made concerning the payment of the debts of Litchfield & Stombs, and are conditioned upon it. Such settlement may therefore be proved with the writings.

Again, " when a writing evidently appears to express only some part of an agreement entered into between the parties, it seems it would be admissible to prove the other parts of the agreement on which it is silent. 2 *Cow. and Hill's Notes to Phil. Ev.*, 598.

The Plaintiffs allege in their complaint that the note was given for a debt due to the Plaintiffs. In their proof they show that it was for a debt due them from Litchfield & Stombs, which was in judgment. The Defendants having denied any consideration, and alleged payment, might show that the debt of Litchfield & Stombs was paid by the acceptance of the book accounts at the value stated in the writings.

There was clearly no error in receiving the parol evidence, and the judgment is affirmed.

The form of the verdict is unexceptionable. *Comp. Stats.*, p. 561, sec. 35.