# Richards et al. v. Shipley, Appellant.

*Equity—Contracts in restraint of trade—Reasonable restraint of trade—Violation—Injunction.*

The owner of a coal business sold the same including his trade name, trade-mark, good will, fixtures, etc., and agreed not to engage in the coal business in the city in which he had been so engaged for a period of two years, and not within a radius of two miles from his former place of business for a period of five years. Three years thereafter the vendor established a place of business inside the city limits but outside the two mile radius and solicited orders within the two-mile radius. *Held,* the lower court, upon the application of the owner of the business purchased from such vendor, did not err in restraining defendant from soliciting or transacting retail coal business in any way within a radius of two miles from his former place of business until five years from the date of the agreement.

Argued Jan. 25, 1917. Appeal, No. 365, Jan. T., 1916, by defendant, from decree of C. P. No. 3, Philadelphia Co., March T., 1916, No. 1259, continuing an injunction, in case of J. Ernest Richards, Howard F. Hansell, Jr., F.

Wilson Prichett and George B. Newton Coal Company, a corporation v. Walter C. Shipley.  Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction.

DAVIS, J., filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

Upon the bill, answer and proofs the following facts are found:

1. The plaintiff, George B. Newton Coal Company, is a Pennsylvania corporation chartered September 4, 1912, under the name of "Heg Coal Company," its corporate name being shortly thereafter changed to George B. Newton Coal Company.  It is, and has been since November, 1912, engaged in the retail coal business in the City of Philadelphia.

2. The plaintiffs, J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett, are citizens of Pennsylvania and residents of Philadelphia.  They were the promoters of the George B. Newton Coal Company which they organized in the year 1912 for the purpose of purchasing and consolidating a number of retail coal businesses in the City of Philadelphia: Pursuant to said plan, said coal company did, in the fall of 1912, purchase and acquire the plants, properties, assets, trade names and good will of a number of retail coal businesses theretofore conducted in said city, among others being the coal business conducted by the defendant, Walter C. Shipley.

3. The defendant, Walter C. Shipley, is a citizen of Pennsylvania residing in the City of Philadelphia.  Prior to November, 1912, he had been engaged for many years in the retail coal business in said city, his principal office and place of business being at the corner of Price street

and Main street, in Germantown, Philadelphia. He did a large retail coal business in Germantown and owned a valuable business and good will, his business being conducted under the name of "Walter C. Shipley."

4. On November 22, 1912, the defendant, Walter C. Shipley, executed a bill of sale, a copy of which is attached to the bill. On the same day the plaintiffs F. Wilson Prichett, Howard F. Hansell, Jr., and J. Ernest Richards, executed a bill of sale, a copy of which is attached to the bill of complaint. On the same day the defendant, Walter C. Shipley, and the plaintiffs J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett, entered into the trade agreement, a copy of which is attached to the bill of complaint, which agreement was on said date assigned by said Richards, Hansell and Prichett to the George B. Newton Coal Company, by an assignment, a copy of which is attached to the bill of complaint. On the same date the George B. Newton Coal Company and the defendant, Walter C. Shipley, entered into the employment contract, a copy of which it attached to the defendant's answer.

5. Upon the execution of the bills of sale, assignments and agreements enumerated in the foregoing finding No. 4, and upon the consummation of the transfers contemplated by said documents, the plaintiff, George B. Newton Coal Company, took over and has from that time continuously to the present conducted the business thus acquired by it from said Walter C. Shipley.

6. Pursuant to his said contract of employment with the George B. Newton Coal Company, the defendant, Walter C. Shipley, entered the employ of that company on November 22, 1912, and continued in its employ until the latter part of the month of December, 1915. During most of said period he was in charge of, and manager of, that branch or department of the George B. Newton Coal Company's business which had formerly constituted the business of said Shipley.

7. The agreement dated November 22, 1912, between

the defendant, Walter C. Shipley, and the plaintiffs, J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett, and their assigns (hereinaboye referred to in finding No. 4), provided inter alia as follows:

"Whereas, Walter C. Shipley, by agreement bearing even date herewith, has granted, bargained and sold unto J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett all of his business, trade name, trade-mark, good will, machinery, fixtures, furniture, etc., of his coal business, with the exception of cash, accounts and bills receivable, accounts and bills payable, materials, supplies and stock on hand as set forth in the said bill of sale.

"And whereas, in consideration of the purchase of his business by the said J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett it is deemed to be to the mutual interest of the parties hereto that the said Walter C. Shipley shall refrain from continuing in the coal business in the City of Philadelphia for a period of two years and within a radius of two miles from Main and Price streets, Germantown, for a period of five years, and that he should indemnify the said J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett, and their assigns, from any loss on account of any claims made against the said Walter C. Shipley, in connection with his business or by reason of any accounts and bills payable now outstanding.

"Therefore, it is mutually agreed by and between the parties hereto as follows:

"1. Walter C. Shipley agrees that he will not, for a period of two years from date hereof, within the City of Philadelphia, and for a period of five years from the date hereof within the radius of two miles from Main and Price streets, Germantown, be or become directly or indirectly engaged in or connected with any retail coal business or undertaking similar to that heretofore conducted by him under the name of Walter C. Shipley, either individually or as a member of any firm or partnership, or as an officer, director, manager, stockholder

or employee, or in any other capacity, other than in any one of said capacities in the George B. Newton Coal Company or its subsidiaries companies.

\*    \*    \*    \*    \*    \*    \*    \*.

"This agreement is made with the understanding:

\*    \*    \*    \*    \*    \*    \*    \*

"II. It shall not be so construed as to prevent Shipley becoming the owner of any real estate, whether the same is used in the coal business or otherwise.

"This agreement and the warranties, and covenants shall extend to, inure to the benefit of and be binding upon, the parties hereto, their executors, administrators and assigns."

8. In the month of January, 1915, the defendant, Shipley, rented a tract of land at Chestnut Hill and situated about two miles and five hundred feet from the corner of Main and Price streets, Germantown, and in the summer of 1915 he began to equip and fix the same as a coal yard. Immediately upon leaving the employ of the Newton Coal Company in December, 1915, said Shipley proceeded to transact a retail coal business at said yard under the name of St. Martins Coal Company and is still engaged in said business under said name. Immediately upon entering upon said business he began upon an extensive scale to advertise his business, by means of circulars and otherwise, in various places, and among others throughout that portion of Germantown which lies within two miles of the corner of Main and Price streets. He actively solicited orders of coal within said district in various ways, and among others by circulars signed "St. Martins Coal Company, by Walter C. Shipley," and sold and delivered coal in said district.

9. When the defendant Shipley negotiated the lease of his present yard at Chestnut Hill it was his belief that said yard should be rented by the plaintiff, Newton Coal Company. He was urging upon the Newton Coal Company the advantages that would accrue to it from renting such yard, and acted in the premises on behalf of the

Newton Coal Company. It was not until the fall of 1915 that the proposal that the Newton Coal Company should take over said yard was abandoned.

10. At no time did the defendant, Shipley, inform any of the officers or directors of the Newton Coal Company that he intended, upon entering upon the retail coal business at his present yard, to solicit orders within the district lying within two miles of Main and Price streets, Germantown, or engage directly or indirectly in the retail coal business in said district prior to November 22, 1917, the time limit fixed in his said agreement of November 22, 1912. At no time did the George B. Newton Coal Company or any of its officers, directors or committees authorize, agree or consent that said Shipley should disregard in any way the trade restrictions contained in his said agreement.

## CONCLUSIONS OF LAW.

1. The agreement of November 22, 1912, between Walter C. Shipley and J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett, and which was subsequently assigned to the George B. Newton Coal Company, whereby said Shipley agreed to refrain for a period of five years from November 22, 1912, within the radius of two miles from Main and Price streets, Germantown, from engaging or becoming interested, directly or indirectly in the retail coal business or any undertaking similar to that conducted by him under the name of Walter C. Shipley prior to November 22, 1917, is a legal, valid and enforcible agreement.

2. Under his said trade agreement with the George B. Newton Coal Company said Walter C. Shipley has no right either under his own name or the name of St. Martins Coal Company, or any other name, to solicit orders for retail coal from, or receive orders for retail coal from, or make deliveries of retail coal to, any persons, firms or corporations within two miles of Main and Price streets, Germantown.

3. Neither the George B. Newton Coal Company nor any of its officers, committees or directors have waived the rights of said company under said trade agreement, by acquiescence or otherwise.

4. The evidence offered on behalf of the defendant, Shipley, tending to prove an oral agreement entered into between said Shipley and one or more of the promoters of the Newton Coal Company, in derogation of the trade agreement entered into by said Shipley in the written contract of November 22, 1912, was irrelevant and inadmissible.

5. At no time did Howard F. Hansell, Jr., or any of the promoters of the Newton Coal Company agree or attempt to agree with said Shipley that he would not be required to observe his trade agreement of November 22, 1912.

6. The plaintiffs are entitled to the relief prayed for in the bill, and the temporary injunction heretofore entered by the court should be continued to cover the period named in said agreement of November 22, 1912, to wit, until November 22, 1917.

### DISCUSSION.

The bill in equity filed prays for an injunction to restrain the defendant

"From being or becoming, directly or indirectly, engaged in or connected with any retail coal business in the City of Philadelphia for a period of two years from November 22, 1912, either in his own name or under the name of St. Martins Coal Company or any other name or as a member of any firm or partnership, or as an officer, director, manager, stockholder or employee of any corporation, or in any other capacity;"
and further

"Restraining and enjoining said Walter C. Shipley, either in his own name or under the name of St. Martins Coal Company or any other name from soliciting retail coal business or transacting a retail coal business in any

way within a radius of two miles from Main and Price streets, Germantown, Philadelphia, for a period of five years from November 22, 1912."

The plaintiffs and defendant entered into an agreement dated November 22, 1912. This agreement provided, in part:

"In consideration of the purchase of his business by the said J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett, it is deemed to be to the mutual interest of the parties hereto that the said Walter C. Shipley shall refrain from continuing in the coal business in the City of Philadelphia, for a period of two years, and within a radius of two miles from Main and Price streets, Germantown, for a period of five years, and that he should indemnify the said J. Ernest Richards, Howard F. Hansell, Jr., and F. Wilson Prichett, and their assigns from any loss on account of any claims made against the said Walter C. Shipley, in connection with his business or by reason of any accounts and bills payable now outstanding."

It is admitted that the defendant has established a retail coal business and yard under the name of "The St. Martins Coal Company." The yard is located at what is designated by the defendant as 7600 Germantown avenue. It appears that this location is a few hundred feet outside of the two-mile radius from Main and Price streets, Germantown, the location indicated in the contract. It is further admitted by the defendant that he has solicited business in the City of Philadelphia, within a radius of two miles from Main and Price streets, Germantown.

The terms of the agreement are neither vague nor ambiguous and the meaning of the parties to the agreement is conclusively presumed to have been set forth in its written words. A meeting of the parties preliminary to the execution of the contract was held, and a contract submitted to the defendant was reformed at the suggestion of himself and his counsel. We conclude from the

brief of counsel for defendant and his argument at the hearing that his interpretation of this contract is that the defendant may establish a retail coal business beyond the two-mile radius and deliver coal to customers living within the territory included in the radius of two miles from Main and Price streets. We need not here concern ourselves as to the motive or reason actuating the minds of the parties to the agreement, as to the limitation of time or territory as therein set forth. As we have already stated the purpose and requirements of the agreement are perfectly clear, and we cannot read into the agreement any mental reservation or mutual understanding not therein expressed at the time of the execution. The defendant contends that the plaintiff corporation by one of its officers acquiesced in the action of the defendant in securing a coal yard and placing a stock of coal therein at 7600 Germantown avenue. It appears from the correspondence between the defendant and the president of the plaintiff company, and from conversation with other officers of the company that the defendant desired to sever his connection with this company as an employee. There is nothing in the agreement requiring the defendant to continue as an employee of the company, and it further appears that the officers of the company desire the defendant to continue in the service of the company as an employee. The defendant further contends that the action of Mr. White, the vice-president of the plaintiff company, in advising defendant as to the method of constructing the coal pockets in defendant's yard, amounted to an acquiescence of the company in defendant's action in violating the terms of the agreement. We find as part of the agreement the following:

"2. It shall not be so construed as to prevent Shipley from becoming the owner of any real estate, whether the same is used in the coal business or otherwise."

The defendant cannot be estopped from establishing a coal yard in the City of Philadelphia after the expiration of two years, provided such yard is not within a

radius of two miles from Main and Price streets, Germantown. The defendant evidently recognized that provision, as he was careful to go a few hundred feet beyond that radius in constructing his new plant.

We are not convinced that the conduct of the officers of the company acting in their individual capacity, amounted to an acquiescence in the abrogation of the contract, nor that the plaintiff corporation is estopped from enforcing the clause prohibiting the defendant from doing business for a period of five years within a radius of two miles from Main and Price streets, Germantown, and the result of their discussions in relation to defendant's right to disregard the agreement was to the effect that defendant could not arbitrarily abrogate the contract. The officers or directors of the plaintiff corporation appear to have been acting as individuals. In any event, it does not appear that there was any official action taken by the plaintiff company authorizing them to abrogate the contract, and we are of opinion that the officers of the company acting as individuals, cannot waive the right of the company plaintiff to enforce the terms of the contract. If the agreement is to be abrogated, the corporation, in its official capacity, should authorize such action.

It is not necessary at this time to cite the numerous authorities supporting the right of an injunction for violation of contracts similar to the agreement in this case. In Monongahela River Coal & Coke Co. v. Jutte, 210 Pa. 288, it was said (p. 302) :

"When a contract is presented which in some degree restrains trade we do not at once decide that it is void as against public policy, but we go further and inquire, Is it limited as to space or time, and is it reasonable in its nature? We are approaching nearer and nearer to the conclusion, although we have not yet reached it, that common honesty is the true public policy."

We are of opinion that it is a breach of the agreement to conduct a business similar to the one transferred with-

in the radius of two miles from Main and Price streets or to do acts in violation of the spirit and intent of the contract. The defendant cannot be restrained from establishing a coal yard, after the term of two years, beyond the territorial limits set forth in the agreement, but the soliciting of business, the selling and delivery of coal to customers within the territorial limits is carrying on business and a breach of the contract.

The court on final hearing continued the preliminary injunction which it had issued. Defendant appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and conclusions of law and the decree of the court.

*Alex. Simpson, Jr.,* with him *E. Spencer Miller,* for appellant.

*Charles L. McKeehan,* of *Roberts, Montgomery & McKeehan,* for appellees.

PER CURIAM, March 12, 1917:

This appeal is dismissed on the facts found and the legal conclusions reached by the learned chancellor below and on his discussion of the questions involved.

Decree affirmed at appellant's costs.