## AMERICAN BRIDGE CO. v. CRAWFORD.

Circuit Court of Appeals, Third Circuit.
March 12, 1929.

No. 3836.

Theodore S. Paul and George Wharton Pepper, both of Philadelphia, Pa. (Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., of counsel), for appellant.

Ralph B. Evans and Evans, Bayard & Frick, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a judgment of the District Court on the ground that the court erred in admitting parol evidence and in allowing the general contractor to recoup from his subcontractor the amount he had to pay for the death of one of the latter's employees under the Workmen's Compensation Act of Pennsylvania (Pa. St. 1920, § 21916 et seq.).

The controversy arises out of a contract for the construction of two buildings. The first is the Pennsylvania Hotel at Thirty-Ninth and Chestnut streets, Philadelphia, and the second is the boiler house connected with the hotel. There are two questions involved. The first question arises in connection with the contract to fabricate the steel for the hotel, and the second from the death of an employee of the American Bridge Company, the subcontractor, in building the boiler house.

On March 22, 1922, the parties entered into a written contract by which the American Bridge Company agreed to fabricate and erect for Daniel Crawford, general contractor, the steel necessary for the twelve-story hotel. This building was designed by Mr. Clarence E. Wunder, whose plans for the steel framing called for "Bethlehem Sections." In its estimate the American Bridge Company substituted "Standard Sections," which are lighter than "Bethlehem Sections." After some negotiations, the bridge company was awarded the contract for $112,600, which was arrived at on the basis of an estimated weight of 1,925 tons of steel at $58.50 per ton. This is called the original contract.

On further study of the Wunder plans, it was thought that his specifications required too heavy sections in some places and too light in others. Consequently a complete redesign was made, using "Standard Sections." The result was a saving in some places and a.loss in others over the original estimate. The construction of the floor plan was also changed.

The changes were all finally agreed upon at a meeting on April 24, 1922. The fact of the agreement is admitted, but its terms are in dispute. The bridge company says that all these changes necessitated an additional expense of $33,359, and that this was definitely agreed upon at that meeting. On the other hand, Mr. Crawford says that the differences were finally adjusted by an agreement that the expense of these changes was to be determined according to the weight of the steel used, as certified by the Pittsburgh Testing Laboratories; that the defendant was to be charged with 1,925 tons at $58.50 per ton, the original contract price, and $62 per ton for any excess.

At any rate, on the same day, following the meeting, the bridge company wrote Mr. Crawford as follows:

"Referring to our contract covering the structural steel work for Apartment Hotel for the Pennsylvania Apartments, Inc., we beg to confirm our conversation of today that all the changes made to date and the material added, consisting of miscellaneous additions and modifications and the necessary steel to allow the short span floor system involve additional expense amounting to Thirty-three Thousand Three Hundred Fifty-nine Dollars ($33,359.00) which we understand is satisfactory and we await your formal acceptance covering same, all the conditions and terms of payment as per the original contract to apply.

"This proposal is made for immediate acceptance and upon the understanding that if accepted the following conditions are agreed to:

"All agreements are contingent upon ability to procure material from the rolling mills and upon strikes, accidents and other delays beyond our reasonable control.

"Our usual form of contract shall be executed when requested and all requirements of our credit department must be satisfied.

."Unless otherwise stipulated, payment shall be made as follows: for delivered material, net cash thirty days from date of each invoice. For material erected, monthly estimates to the full value of the material purchased, fabricated, delivered or erected."

Mr. Crawford answered on April 28th, saying:

"I am in receipt of your letter of April 24th naming a price of Thirty-three Thousand Three Hundred Fifty-nine Dollars ($33,359.-00) for additional steel required for the above building in accordance with the revised drawings recently submitted to me, providing for flat slab floor construction instead of as originally designed.

"I understand that this additional price is to cover:

"1. Changes made necessary in the story heights and to correct errors in the plans—totaling about 27½ tons.

"2. Proper wind bracing—totaling about 25 tons.

"3. Change in design to permit of flat slab floor construction—462½ tons.

"4. Additional steel necessary to brace flange of channel at bays—approximately 6 tons.

"5. Re-detailing columns 8th to 10th floors at a cost of $500.

"The above changes will add to the contract approximately 521 tons and the additional cost for same, including all designing for the structure, will be in the above sum.

"Kindly proceed with this work with all possible speed, and oblige,

"Yours very truly."

The bridge company completed the work for both the hotel and the boiler house. Its claim for the steel for the hotel, not including the boiler house, was:

| | | |
|---|---|---|
| Original contract | 1,925 | tons |
| Supplemental contract of April 24 | 521 | tons |
| Additional extras | 32½ | tons |
| | 2,478½ | tons |

It says that the defendant owes it for work and material on the hotel as follows:

| | |
|---|---|
| Original contract price | $112,600 00 |
| Additional material and changes in accordance with letters of April 24 and 28, 1922 | 33,359 00 |
| Additional labor and materials in accordance with orders of September 9, 1922, and October 5, 1922 | 241 39 |
| Revision of plans and drawings, preparation for additional details, etc. | 1,075 00 |
| Additional steel furnished | 2,282 00 |
| | $149,557 39 |

The amount of steel actually used, as certified by the Pittsburgh Testing Laboratories, was 2,244 tons.

The case was tried to the court, by agreement, without a jury, and Judge Kirkpatrick found that the bridge company was entitled to:

| | |
|---|---|
| Original contract price for first 1,925 tons | $112,600 00 |
| Supplemental contract—319 tons at $62 per ton, being the difference between 2,244 tons and 1,925 tons | 19,778 00 |
| Extra office work under supplemental contract | 500 00 |
| Extras (admitted) | 241 39 |
| Extra drawings | 1,075 00 |
| | $134,194 39 |

At the trial the court admitted over plaintiff's objection evidence of the terms of the

supplemental agreement of April 24, 1922, on the ground that the entire contract was not set forth in the two letters of April 24 and 28, 1922. This evidence tended to prove that it was agreed at the meeting of April 24, 1922, that the entire work should be placed on a per ton basis, and that the defendant should pay $58.50 per ton, for the first 1,925 tons and $62 per ton for all steel used in addition thereto. The admission of this evidence is assigned as error and is the first question for determination.

As a matter of fact, as we understand it, the bridge company fabricated and furnished only 2,244 tons of steel for the hotel. But the bridge company contends that the amount of steel which it furnished has nothing to do with the amount which it is entitled to be paid, and this contention must be sustained if the entire supplemental agreement made by the parties at their meeting on April 24, 1922, is contained in the two letters of April 24 and 28, 1922, quoted above.

The amount of payment depends upon the terms of the contract. If those letters contain the entire agreement, the evidence purporting to add other facts and covenants, or varying the terms of the contract, should not have been admitted. Richards v. Shipley, 257 Pa. 134, 101 A. 456; Williams v. Notopolos, 259 Pa. 469, 103 A. 290; Rash v. Shower Brothers, (C. C. A.) 288 F. 819; Emerson v. Slater, 22 How. (63 U. S.) 28, 16 L. Ed. 360; De Witt v. Berry, 134 U. S. 306, 315, 10 S. Ct. 536, 33 L. Ed. 896; Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 318, 22 S. Ct. 133, 46 L. Ed. 213; American Fire Insurance Co. v. King Lumber Co., 250 U. S. 2, 39 S. Ct. 431, 63 L. Ed. 810. The learned trial judge found as a fact that the two letters did not contain the entire supplemental contract.

They do not purport to be the formal agreement itself, but only a confirmation of it. Neither do they in terms purport to cover the entire agreement. They do not mention the allowance to defendant of any steel less than the estimated amount of 521 tons, but do refer to the oral agreement or conversation, and in such case testimony may be admitted to show the surrounding circumstances and whether or not the parties intended to put the entire agreement in the letters. Wigmore on Evidence (2d Ed.) § 2430. Where there is a direct reference in a writing not purporting to be the agreement itself, as here, the agreement may be proved though the effect of such proof is to add material terms and conditions to the contract evidenced by the writing. Ruggles v. Swanwick, 6 Minn. 526 (Gil. 365);

22 Corpus Juris, p. 1290. Where a letter does not purport to be a complete contract, but merely a recitation and confirmation of an oral agreement, such oral agreement, and not the letter, constitutes the real contract between the parties, and such contract may be shown by parol evidence. 22 Corpus Juris, p. 1132; Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 517, 12 S. Ct. 46, 35 L. Ed. 837.

The original contract contemplated the furnishing and fabricating of the entire steel necessary to complete the hotel for $112,600. It was estimated that this would require 1,925 tons at $58.50 per ton. Later it became evident that certain changes in design and construction were necessary. It was thought by the plaintiff that this would require about 521 tons of additional steel, for which the defendant agreed to pay $62 per ton. No one knew how much would be required, but the exact requirement was to be determined by the Pittsburgh Testing Laboratories. The letters refer to the conferences of the parties on April 24, 1922, and state that the plaintiff's "usual form of contract shall be executed when requested and all requirements of our credit department must be certified." These, together with the circumstances surrounding the parties at the time of this conference, made it proper, in our opinion, to admit testimony to show what the entire agreement of April 24, 1922, was. From that testimony the trial judge, sitting without a jury, has found as a fact that the letters did not cover the entire agreement which was then and there made, and the testimony justifies this finding. Consequently, the testimony objected to was properly admitted.

The second question relates to $5,899.57, the amount of compensation awarded to the widow of Jacob L. Cowperthwaite by the Workmen's Compensation Board of Pennsylvania. Mr. Cowperthwaite was an employee of the plaintiff, bridge company, and while engaged in the course of this employment in the erection of the steel for the boiler house was accidentally killed. His widow filed two petitions for compensation, one against the defendant, the general contractor, and the other against the bridge company, the subcontractor. The petition against the bridge company was dismissed and compensation was awarded against the defendant, Crawford, as above stated. This award was sustained on appeal to the court of common pleas of Philadelphia. In this suit at bar, the defendant filed a set-off against the plaintiff to the extent of this award. It now appears in the light of the decision of the Supreme Court of Pennsyl-

vania, in the case of Byrne v. Hitner, 290 Pa. 225, 138 A. 826, that the petition should not have been dismissed against the bridge company, and that under the facts of this case the award should have been made against it and not against the general contractor. But this fact is of no avail to the plaintiff, for in the contract whereby he agreed to erect the boiler house, it is provided that: "This order is given and accepted on the express understanding that as to any labor done in the furnishing, delivering, assembling or erecting the material covered hereby, the vendor (Bridge Company) accepts the provisions of the Workmen's Compensation Law of Pennsylvania, and will save harmless, defend and indemnify the vendee (Crawford) from any loss occasioned thereby." The award which Crawford paid is a loss occasioned by and in the erection of the steel for the boiler house, and the allowance of the set-off by the trial court was simply the enforcement of the contract which the plaintiff entered into to save the defendant harmless from any loss occasioned thereby. It makes no final difference, as we see it, to the plaintiff, whether it paid the award made against it in the first place under the Workmen's Compensation Act of Pennsylvania, or whether it pays the amount of the award against the defendant in accordance with its contract obligation. Therefore the court below did not err in allowing the set-off.

The judgment is affirmed.