CHECKET-COLUMBIA COMPANY *v.* LIPMAN ET AL.
(Two Appeals in One Record)

[No. 76, October Term, 1952.]

496

*Decided February 11, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Solomon Liss* for the appellant and cross-appellee.

*Ellis Peregoff*, with whom was *Gilbert I. Friedel* on the brief, for the appellees and cross-appellants.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted by Checket-Columbia Company, a Maryland corporation operating three retail stores in Baltimore, to enjoin Maurice S. Lipman and his coconspirators from violating a covenant that he would not engage in a competing business "within a radius of ten city blocks," and to recover damages for violations of the covenant.

Complainant was incorporated in August, 1949, when the stockholders of two corporations—Checket Company, which operated a retail furniture store at 18 North Howard Street, and Columbia Sales Company, which operated two furniture and clothing stores, one at 1642 Pennsylvania Avenue, the other at 561½ North Gay Street—entered into an agreement to dissolve them and form a new corporation. Lipman owned the capital stock of Checket Company, while Jacob, Max and Joseph Gersh and Abraham J. Cohen owned the capital stock of Columbia Sales Company. Lipman transferred the assets of Checket Company to complainant for $41,720.44, while the Gersh brothers and Cohen transferred the capital stock of Columbia Sales Company to complainant for $32,157.44. Joseph Gersh was elected president of the corporation, and Lipman was elected treasurer.

Attached to the agreement was a bill of sale executed by Lipman and complainant's president in compliance with the Sales in Bulk Act. The covenant in controversy was included in the bill of sale. Lipman recites in the bill of sale that he sells to complainant all the listed assets and "all other fixtures not specifically mentioned * * * but used in the conduct of the retail furnishing

store located at 18 North Howard Street." Then appears the following covenant: "I, Maurice S. Lipman, do further agree that I will not engage, either directly or indirectly, as owner, agent, servant or employee, either gratuitously or for hire, in a like or competing business within a radius of ten city blocks for a period of ten years, except as an officer, agent or employee of the Checket-Columbia Company."

Since August, 1949, complainant has been operating the three stores. Lipman, however, became dissatisfied with the operation of the business, and on December 1, 1950, he sold all his capital stock in the company to his four associates for $20,000.

In January, 1951, Sidney Turchin, one of complainant's employees in its store at 1642 Pennsylvania Avenue, left its employ and entered the employ of Stanley Macklin in the Greer Dress Shop at 1644 Pennsylvania Avenue. In September Macklin sold the store to Lipman. Several weeks later Lipman invited Turchin and also Morris Rombro and Harold Oreman, who were then employed by complainant in the store on North Howard Street, to join with him in forming a corporation to operate the business. Accordingly on September 26 Lipman, Turchin, Rombro and Oreman incorporated the Shirl Company. On the next day Rombro and Oreman left the employ of complainant and started to work for the Shirl Company.

Complainant alleged that Lipman conspired with Rombro and Oreman while they were still employed by it to enter into competition with it in violation of the covenant. It alleged that he arranged for the organization of the Shirl Company and its occupancy of the store on Pennsylvania Avenue next door to complainant's store. It also alleged that Rombro and Oreman made disparaging remarks about it and its merchandise and attempted to dissuade customers from entering its store. It prayed the Court to enjoin defendants from engaging in a competitive business within a radius of ten city blocks from each of complainant's stores for the period of ten

years; to enjoin defendants from continuing their malicious and unlawful competitive methods; to require defendants to make an accounting of the profits of the Shirl Company; and to award damages for the breach of covenant.

The chancellor passed a decree (1) enjoining Lipman from engaging directly or indirectly in any business similar to that formerly conducted by the Checket Company within a radius of ten blocks from 18 North Howard Street for a period of ten years from August 1, 1949; (2) similarly enjoining the Shirl Company as long as Lipman has any interest in it; (3) similarly enjoining Turchin, Rombro and Oreman as long as they are employed by Lipman or by the Shirl Company as long as Lipman has any interest in it; and (4) granting complainant leave to apply to the Court to refer the case to an auditor to take proof to determine what damages have been sustained by complainant as a result of the breach of covenant. Complainant and all defendants appealed here from the degree.

We affirm the first paragraph of the decree enjoining Lipman from engaging in business in competition with complainant within a radius of ten blocks from 18 North Howard Street. While it is true that he had not opened a store within that area, there was evidence that he had directly or indirectly solicited business within that area. In some States, as in New Jersey, the courts have followed the rule established in England in *Trego v. Hunt,* 65 L. J. Ch. 1, that a person who has sold the good will of his business may, unless he has otherwise covenanted, set up a rival business but he may not solicit the custom of those who previously dealt with him. *Snyder Pasteurized Milk Co. v. Burton,* 80 N. J. Eq., 185, 83 A. 907. In 1912 the Maryland Court of Appeals made the distinction in *Brown v. Benzinger,* 118 Md. 29, 40, 84 A. 79, that where there is a sale by a physician or other professional man of his business, an injunction may be issued to prevent him from setting up in the same profession in competition with the buyer, even

though there is no express covenant to that effect; but where there is a sale of a mercantile establishment, an injunction may not be issued for such a purpose, unless the seller made an express covenant that he would not enter into competition with the buyer.

The case before us presents an express covenant of the seller of a business that he will not engage in a competing business within a certain area. The importance of enabling the owner of a business to dispose of it in such a way as to secure to the purchaser the good will of the business, by agreeing not to enter into competition with the purchaser within a certain area, has led to the accepted rule that such a covenant is valid if the restriction is confined within limits which are no wider than the protection of the covenantee may reasonably require. *Griffin v. Guy,* 172 Md. 510, 192 A. 359. Such a covenant in partial restraint of trade is in effect a sale of the good will. *United States v. Addyston Pipe & Steel Co.,* 6 Cir., 85 F. 271, 281, affirmed, *Addyston Pipe & Steel Co. v. United States,* 175 U. S. 211, 20 S. Ct. 96, 44 L. Ed. 136. When the seller of a business covenants that he will not conduct a competing business within a reasonably limited area, and he violates his agreement, the purchaser is entitled to an injunction to protect his contractual rights. *Guerand v. Dandelet,* 32 Md. 561, 568; *Anderson v. Truitt,* 158 Md. 193, 148 A. 223. It is now generally accepted that where the seller of a business expressly covenants that he will not engage in business in competition with the buyer within a certain area, the agreement is violated by the seller if he solicits the buyer's customers within the prohibited area, although he may operate his place of business outside that area. *Richards v. Shipley,* 257 Pa. 134, 101 A. 456; *Johnson v. Stumbo,* 277 Ky. 301, 126 S. W. 2d 165; *Midland Lumber & Coal Co. v. Roessler,* 203 Wis. 129, 233 N. W. 614; *Foxworth-Galbraith Lumber Co. v. Turner,* 121 Tex. 177, 46 S. W. 2d 663, 87 A. L. R. 323.

For example, in *Sander v. Hoffman*, 64 N. Y. 248, 252, 253, where a dealer in meat, fish and vegetables sold the stock and good will, and he and others covenanted that they would not engage in any similar business for a period of five years within a certain area, the Court of Appeals of New York held that the covenant was broken when the covenantors opened a store a short distance outside the area and supplied some of the old customers, who resided within the area, by delivering goods to them each day and receiving orders for the following day, even though the sales were made at the request of the customers. The Court said in that case: "The covenant of the defendants bound them to do more than refrain from soliciting patronage. It bound them not to carry on the business within the prescribed district, and if applied to for that purpose, it was their duty to decline on the ground that they had covenanted not to do so. * * * The object of the covenant was to secure the withdrawal of the defendants from the business in order that the trade which would have gone to them, had they continued, should go to the plaintiffs. If the defendants continued their business and supplied their former customers or others in the district, the damage to the plaintiffs is the same whether the defendants sought the customers or they voluntarily came to the defendants. If the defendants declined to do the business, as their covenant bound them to do, this trade might have gone to the plaintiffs."

On the other hand, a restrictive covenant should not be extended by implication beyond its original intent to include anything not clearly expressed in the contract. If there is any ambiguity in its meaning, any doubt should be resolved in favor of the covenantor. *Baltimore Butchers Abattoir & Live Stock Co. v. Union Rendering Co.*, 179 Md. 117, 123, 17 A. 2d 130. In this case the instrument that contained the covenant did not mention any store except the store on North Howard Street. That store was the only one in which Lipman had any interest at that time. To read into the contract a covenant

that Lipman would not engage in business within a radius of ten blocks from the store at 1642 Pennsylvania Avenue and within a radius of ten blocks from the store at 561½ North Gay Street would be inserting into the contract something which was not expressed by the parties.

We also affirm the second paragraph of the decree enjoining the Shirl Company from engaging in business in competition with complainant within a radius of ten blocks from 18 North Howard Street as long as Lipman has any interest in the Shirl Company. Lipman covenanted that he would not engage in a competing business "either directly or indirectly." He should not be allowed to evade his covenant by means of a corporation, which he helped to organize and which he helps to direct.

We also affirm the third paragraph of the decree enjoining Lipman's associates, Turchin, Rombro and Oreman, from engaging in business in competition with complainant as long as they are employed by Lipman or by the Shirl Company as long as Lipman has any interest in it. The evidence supports complainant's charge that Lipman conspired with these three men to compete with the business conducted by complainant at 18 North Howard Street. Complainant alleged that just before they left its employ, Rombro and Oreman made a list of its best customers, and that they solicited these customers to buy from the Shirl Company. Lipman admitted that Rombro solicited wherever he could on the same route that he had covered for complainant. A fraudulent conspiracy is the confederation of two or more persons to cheat and defraud, when the design has actually been executed by the confederates with resulting damage to their victim. The law considers that when persons join in an unlawful enterprise, the acts done and the words spoken during the existence of the enterprise are the acts and words of all of them.

We also affirm the fourth paragraph of the decree granting complainant leave to apply to the Court to refer

the case to an auditor to take proof to determine what damages complainant, has sustained as a result of the breach of covenant. The determination of the amount of damages may require an examination of records and an audit of accounts as well as the taking of testimony. It is well settled that if a convenantor associates with others in a conspiracy to violate his covenant, his conduct entitles the covenantee to recover against the conspirators any damages he has sustained resulting from the breach. *Western Maryland Dairy v. Chenowith*, 180 Md. 236, 243, 23 A. 2d 660.

*Decree affirmed, each side to pay one half of the costs.*