**Francis X. McLAUGHLIN**

v.

**Lammot duPont COPELAND, Jr. and Lammot duPont Copeland, Sr. and E. Norman Veasey.**

**Civ. No. B–76–475.**

United States District Court, D. Maryland.

June 7, 1977.

Phillip M. Sutley and Michael E. Marr, Baltimore, Md., for plaintiff.

Franklin G. Allen and Francis B. Burch, Jr., Baltimore, Md., for defendant Copeland, Jr.

Wilbur D. Preston, Jr. and Richard J. Magid, Baltimore, Md., for defendant Copeland, Sr.

Francis D. Murnaghan, Jr. and Elizabeth H. Trimble, Baltimore, Md., for defendant Veasey.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is a tort action brought under the court's diversity jurisdiction after removal from the Circuit Court for Baltimore County pursuant to 28 U.S.C. § 1441. Plaintiff is a Maryland citizen admitted to practice law in Maryland and the District of Columbia. Defendants are Lammot duPont Copeland, Sr. [Copeland], his son, Lammot duPont Copeland, Jr. [Junior], and E. Norman Veasey [Veasey], a Wilmington attorney. The defendants are all citizens of Delaware.

### The Complaint

The complaint alleges that Copeland, Junior, and other persons (including Thomas A. Shaheen, the majority shareholder of Columbia Financial Corporation and Junior's financial advisor) conspired to enable Copeland to conceal personal loans or gifts to Junior as business expenses of the Winthrop Lawrence Corporation [Winthrop]. The plan allegedly called for Junior to pledge his Winthrop stock to Copeland in exchange for $10.4 million in loans and loan guarantees to Winthrop. Winthrop was then to use the funds to acquire control of Transogram, Inc. which thereafter would become the conspirators' conduit for passing Junior's personal financial problems onto the Transogram shareholders. Plain-

tiff alleges that the conspirators allegedly violated United States securities laws in furtherance of their scheme.

On November 10, 1970, Winthrop filed a Chapter XI arrangement petition in Baltimore. On November 19, 1970, Copeland, representing that he was a Winthrop creditor in the amount of $8,200,000, filed an application for the appointment of a receiver. Junior filed a Chapter XI bankruptcy petition in Wilmington in October 1970 and retained Veasey as counsel. In that proceeding, McLaughlin represented Pappas, one of Junior's alleged creditors. McLaughlin appeared on Pappas' behalf in November 1974 and made references to the prior allegedly fraudulent and potentially criminal activities by the conspirators. McLaughlin informed the defendants that he was prepared to file a class action on behalf of Winthrop creditors against Copeland, Junior, and others based on McLaughlin's investigation of their activities. McLaughlin showed Veasey a draft complaint and told him that he was prepared to provide information about Copeland and Junior to the Justice Department.

At this point McLaughlin alleges that Veasey, Copeland, and Junior became apprehensive about exposure of their activities and that they and others, in an effort to forestall exposure, entered into an agreement to "discredit, defame and damage" him. This is the conspiracy which forms the basis of this suit. McLaughlin contends that Veasey, acting for himself, Copeland, and Junior, attempted to uncover "something 'actionable'" against McLaughlin or Pappas which would cause Pappas to reduce or withdraw his Chapter XI claim in Wilmington. Defendants' efforts allegedly increased when they learned that information about them was being submitted to a Senate Committee for referral to the Department of Justice and the FBI. McLaughlin alleges that, before or during January 1975, defendants and others agreed to entice or entrap him into committing extortion or violating a disciplinary rule of the Code of Professional Responsibility.

McLaughlin met Veasey in Baltimore on February 21, 1975 to discuss settlement of Pappas' claim against Junior in the Wilmington bankruptcy proceeding. This meeting was the catalyst for the subsequent events upon which this suit is premised. After his return to Wilmington, Veasey dictated a memorandum about the meeting. Veasey edited this memorandum and sent it in the form of a letter dated March 5, 1975 to United States District Judge Schwartz in Wilmington. (Veasey Motion to Dismiss, Veasey Affidavit, Exhibit A). Copies were sent to Pappas' local counsel, James P. D'Angelo, to counsel for Junior's creditors' committee, Howard L. Williams, and to McLaughlin. With the exception of the McLaughlin copy which was received in Maryland, all mailings were sent and received within Delaware. In the letter, Veasey stated his version of the settlement negotiations with McLaughlin and raised the question of whether McLaughlin's actions were a violation of DR 7–105, Threatening Criminal Prosecution. Judge Schwartz referred the matter to the Disciplinary Board of the District of Columbia Bar which held a hearing June 11, 1975 and concluded that there was insufficient evidence to support a finding that McLaughlin had violated DR 7–105. Plaintiff alleges that the defendants caused the disciplinary proceedings to be instituted by mailing Veasey's letter to Judge Schwartz. The complaint contains three counts alleging civil conspiracy, defamation, and malicious interference with business. Plaintiff seeks twelve million dollars in damages on each count. All defendants have moved to dismiss for lack of *in personam* jurisdiction. Copeland has moved in the alternative for transfer to the District of Delaware. Also pending are motions to strike which relate to affidavits, exhibits and attachments filed in conjunction with the motions to dismiss.

### The Motions to Strike

Before reaching the substantive issues raised by the motions to dismiss, it is necessary to address defendants' motions to strike. Defendants have moved pursuant to Federal Rule of Civil Procedure 12(f) to strike several "pleadings" filed with Plain-

tiff's Response to Defendants' Motion to Dismiss. Specifically, the "pleadings" are the so-called Appendix, the Liptz and McLaughlin affidavits, and exhibits and attachments to the Appendix and affidavits. Each must be examined individually because the alleged infirmities are different in every case.

The first problem is to determine what the Appendix is. The Appendix is not signed by anyone, nor is it in the form of an affidavit. The first paragraph of the Appendix states:

This "Appendix," part of "Plaintiff's Response in Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction," explains and supplements information set forth in his Declaration.

This paragraph and Plaintiff's Opposition to Defendants' Motions to Strike (Court Paper 25) indicate that plaintiff intended that the Appendix be incorporated into and considered as part of his Response to the Motion to Dismiss. Taking plaintiff's construction as true, the question is whether a motion to strike should be granted. Under Rule 12(f), a court may order stricken "any redundant, immaterial, impertinent, or scandalous matter." The Appendix is a fourteen-page document which describes the alleged facts giving rise to this law suit. The motion to strike as it relates to the Appendix will be denied because none of the narrative can be classed as either "redundant, immaterial, impertinent, or scandalous" as those terms have been defined. *Burke v. Mesta Machine Co.*, 5 F.R.D. 134, 138 (W.D.Pa.1946). Notwithstanding the fact that the motion to strike has been denied, the Appendix, just as any brief, is not a source of evidence which a court may consider on a motion to dismiss supported by affidavits. *Cole v. Ross Coal Co.*, 150 F.Supp. 808, 809–10 (S.D.W.Va.), aff'd, 249 F.2d 600 (4th Cir. 1957); *Kramer v. Scientific Control Corp.*, 365 F.Supp. 780, 786–87 (E.D.Pa.1973); *Harry Winston, Inc. v. Waldfogel*, 292 F.Supp. 473, 476 (S.D.N.Y. 1968). Therefore, the court's decision on the motions to dismiss will not be based on the allegations of fact found in the Appendix.

Defendants move to strike the two affidavits on the ground that they do not comport with the requirements of Federal Rule of Civil Procedure 56(e). Defendants assert that neither affiant states that he is competent to testify or that his statement is based on personal knowledge. Defendants also contend that the affidavits contain hearsay which would be inadmissible at trial. In response, plaintiff asserts that allegations contained in his affidavit are based on plaintiff's personal knowledge and are admissible under the rules of evidence, the doctrine of judicial notice, and other unspecified grounds. Plaintiff does not enumerate which exception to the hearsay rule would permit admission of the challenged affidavits.

Federal Rule of Civil Procedure 12(f) relates to matters to be stricken from pleadings. Although affidavits technically do not constitute pleadings, courts have permitted affidavits to be challenged by motions to strike because the Federal Rules provide no other means to contest their sufficiency. *Sunshine Kitchens, Inc. v. Alanthus Corp.*, 66 F.R.D. 15, 17 (S.D.Fla. 1975); *Monroe v. Board of Education*, 65 F.R.D. 641, 647 (D.Conn.1975); cf. *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966). If portions of an affidavit are inadmissible, the whole affidavit need not be stricken but only those portions which are deficient. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578–79 (2d Cir. 1969); *Monroe v. Board of Education*, 65 F.R.D. 641, 647–52 (D.Conn.1975). See J. Moore & J. Wicker, Moore's Federal Practice, ¶ 56.22[1] at 56–1330–31 (2d ed. 1976). The court will treat each of the affidavits separately in order to determine which portions, if any, will be stricken.

While it is true that the Liptz affidavit does not contain the traditional litany of Liptz's personal knowledge and competence to testify, this failure, in and of itself, will not support a motion to strike if it is apparent from the face of the affidavit that the affiant has personal knowledge. *See Monroe v. Board of Education*, 65

F.R.D. at 648–50. In paragraphs 1 through 5 and 8, Liptz describes Junior's activities connected with Winthrop during 1968 to 1970. These paragraphs clearly indicate that Liptz learned of these facts while an attorney and assistant secretary for Winthrop. There is a sufficient showing that these paragraphs are based upon personal knowledge and the motion to strike them will be denied. Paragraphs 6, 7, and 9, however, do not contain such a showing. In paragraph 6, Liptz states that he "was aware" of a recorded deed conveying property from Winthrop to Junior. In paragraphs 7 and 9, Liptz states he "was advised" that Winthrop stock was pledged as security for loans and that monthly financial reports of Winthrop were prepared for Copeland. Although Liptz is an attorney and undoubtedly familiar with the requirements of an affidavit, he does not state how he came to be aware or to be advised of this knowledge. Without an affirmative showing that this information was within Liptz's personal knowledge and competence to testify, the motions to strike 6, 7, and 9 will be granted. *Transo Envelope Co. v. Murray Envelope Co.*, 227 F.Supp. 240, 242 (D.N.J. 1964).

 The fourteen-paragraph McLaughlin affidavit also lacks the litany of personal knowledge and competence to testify but, as before, a motion to strike is inappropriate if personal knowledge and competence to testify are apparent. Paragraphs 1, 2, 3, 9, and 10 show both and the motion to strike those paragraphs will be denied. Paragraphs 4 through 8 concern McLaughlin's interviews of Thomas Shaheen in Beirut, Lebanon. Except for paragraph 4's first sentence which states that McLaughlin interviewed Shaheen in Beirut, paragraphs 4 through 8 are a recitation of what Shaheen told McLaughlin about Shaheen's activities related to Copeland and Junior. This information is hearsay, not within either McLaughlin's personal knowledge or competence to testify. Paragraphs 11 through 14 describe McLaughlin's activities related to his interview of Salvatore Gottuso, a former Winthrop officer and employee. In the first sentence of paragraph

11, McLaughlin states that he interviewed Gottuso. The remainder of paragraph 11, a recitation of information told to McLaughlin by Gottuso, is hearsay which would be inadmissible at trial unless related by Gottuso. McLaughlin in paragraph 12 describes his investigations prompted by the Gottuso interview. Paragraph 12 describes information within McLaughlin's personal knowledge and the motion to strike this paragraph will be denied. In paragraph 13, McLaughlin states that Gottuso submitted to a polygraph examination. Although McLaughlin does not state the basis for this statement, he does state that he received the polygraph examiner's report, so the fact of the examination would be within McLaughlin's competence to testify. The portion of paragraph 13 which recites the examiner's opinion concerning Gottuso's truthfulness is hearsay and is not properly contained in an affidavit. In paragraph 14, McLaughlin states that "to the best of his knowledge" the Madison National Bank did not refer Junior's signed financial statement to the United States Attorney for the District of Columbia for possible prosecution. While this paragraph may be from McLaughlin's personal knowledge, a statement couched in terms of "to the best of his knowledge" is not an affirmative showing of competence and the motion to strike paragraph 14 will be granted. The portions of the McLaughlin affidavit to be stricken are paragraphs 4, 11, and 13, except for the first sentence of each, and paragraphs 5, 6, 7, 8, and 14 in their entireties.

 Attached to plaintiff's Opposition to Defendants' Motions to Strike is another affidavit by McLaughlin. In this affidavit, McLaughlin states the contents of the Appendix and his first affidavit are within his personal knowledge and that he is competent to testify to the matters in both affidavits. Federal Rule of Civil Procedure 56(e) provides in part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein.

There is no provision in Rule 56 for the resuscitation of a defective affidavit by a later affidavit under either an incorporation by reference or a relation back theory. Although the court will assume that this is permissible, it does not view truncated pleadings such as this favorably. McLaughlin attempts, in his second affidavit, to transform the Appendix, which plaintiff's counsel represented to be a pleading incorporated by reference into the Opposition to the Motions to Dismiss, into an affidavit by representing that all the matters contained in the Appendix are within his personal knowledge. The court is aware of the admonition in Federal Rule of Civil Procedure 1 which states that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." This does not require the court, however, to totally ignore fundamental pleading requirements. The Appendix is a fourteen-page narrative which includes some facts along with conclusions of law, allegations of fact, and inferences based upon those allegations. Simply put, the Appendix is not an affidavit. McLaughlin

may represent that all of it is based on personal knowledge, but this bald assertion in face of a document which is replete with conjecture and speculation strains the court's credulity. *See Hotel & Rest. Emp., Local 237 v. Allegheny Hotel Co.,* 374 F.Supp. 1259, 1262–63 (W.D.Pa.1974). This is an instance where wishing will not make it so.

The court ignored the lack of a statement of personal knowledge and competence to the extent that they were evident in McLaughlin's first affidavit, so the only remaining question is whether McLaughlin's subsequent representations will save those portions stricken in the court's earlier consideration. The portions of paragraphs 4, 5, 6, 7, 8, 11, and 13 were stricken because in their present state they would be inadmissible at trial. Despite McLaughlin's assertions of personal knowledge and competence, those portions continue to be inadmissible and will be stricken. Paragraph 14 must be stricken also because McLaughlin's second affidavit does nothing to cure the competence problem raised by the "to the best of his knowledge" language. The court's earlier determination on the motions to strike will stand.[1]

---

1. Defendants' motions to strike include the exhibits and attachments to plaintiff's opposition to the motions to dismiss. Exhibit 1, the Liptz affidavit, and Exhibit B, the McLaughlin affidavit, have been discussed above. Exhibit A is a copy of Copeland's Application for Appointment of Receiver in the Winthrop bankruptcy. Attachment 1 is a copy of a memorandum prepared by Thomas Shaheen. Attachment 2 is a copy of the draft complaint McLaughlin prepared on behalf of Pappas. Both attachments are mentioned in the McLaughlin affidavit. Exhibit C is a copy of the Receiver's Application for the Issuance of a Certificate of Indebtedness in the Winthrop bankruptcy. Exhibit D is a copy of a letter of the District of Columbia Bar Counsel's letter to Judge Schwartz reporting the action taken by the Inquiry Committee in the McLaughlin disciplinary matter.

 As in the case of the affidavits, the Federal Rules of Civil Procedure do not contain prerequisites for documents appended to responses to motions to dismiss. Rule 56(e), which courts have used in judging affidavits on Rule 12(b) motions, *provides guidance for this court in viewing the documents here.* Rule 56(e) requires that copies of documents be either

 sworn or certified. In a summary judgment motion, the burden is on the moving party to show that no dispute as to a material fact exists. *Phoenix Savings & Loan, Inc. v. Aetna Cas. & Surety Co.,* 381 F.2d 245, 249 (4th Cir. 1967). When the issue of the court's *in personam* jurisdiction is raised, the plaintiff has the burden of proving the jurisdictional facts. *Malinow v. Eberly,* 322 F.Supp. 594, 600 (D.Md. 1971). There may be cases of contested jurisdiction in which a court may properly consider unsworn or uncertified copies of documents which are not challenged by the opposing party. *See De Sairigne v. Gould,* 83 F.Supp. 270, 272 (S.D.N.Y.), *aff'd* 177 F.2d 515 (2d Cir. 1949), *cert. denied,* 339 U.S. 912, 70 S.Ct. 571, 94 L.Ed. 1338 (1950). In this case, however, defendants have attacked plaintiff's documents. The court, therefore, concludes that Exhibits A, C, and D, and Attachments 1 and 2 must be stricken.

 The court notes that even if it were to consider the documents in their present form, they are largely irrelevant on the jurisdictional issue. Exhibit A, Copeland's Application for Appointment of Receiver, does show that Copeland had some contact with Maryland because

*Jurisdiction*

 Plaintiff alleges that the court may exercise personal jurisdiction over the three defendants under all six subsections of the Maryland long arm statute, *Annotated Code of Maryland,* Cts. & Jud.Proc. Art., § 6–103 (1974). Section 6–103 provides:

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the state;

(2) Contracts to supply goods, food, services, or manufactured products in the state;

(3) Causes tortious injury in the state by an act or omission in the state;

(4) Causes tortious injury in the state or outside of the state by an act or omission outside the state if he regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state;

(5) Has an interest in, uses, or possesses real property in the state; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the state at the time the contract is made, unless the parties otherwise provide in writing.

Notwithstanding plaintiff's argument to the contrary, subsections (b)(2), (b)(5), and (b)(6) are inapplicable to this action and jurisdiction, if it exists, must be found under either subsection (b)(1), (b)(3), or (b)(4). *See generally,* Auerbach, *The "Long Arm" Comes to Maryland,* 26 Md.L.Rev. 13 (1965). If any one of the subsections is satisfied, jurisdiction exists. *Lawson v. Baltimore Paint & Chemical Corp.,* 298 F.Supp. 373, 377 (D.Md.1969). When interpreting the reach of the Maryland long arm statute, this court is bound by the interpretations of the Maryland Court of Appeals. *Shealy v. Challenger Mfg. Co.,* 304 F.2d 102, 104 (4th Cir. 1962); *Bennett v. Computers Intercontinental, Inc.,* 372 F.Supp. 1082, 1084 (D.Md. 1974). The Fourth Circuit in *Haynes v. James H. Carr, Inc.,* 427 F.2d 700, *cert. denied,* 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970), delineated the analysis to be undertaken in cases involving long arm jurisdiction. There the court stated:

Generally, the application of the long arm statute involves two steps. It is necessary to determine first whether the statute permits service of process on the nonresident defendant, and second, whether service under the statute violates the Due Process Clause of the federal constitution.

427 F.2d at 703. The court will examine the facts as they relate to each defendant under each subsection of section 6–103(b) in order to determine if jurisdiction is present.

### Subsection (b)(1)

 The Maryland Court of Appeals in *Mohamed v. Michael,* 279 Md. 653, 370 A.2d 551 (1977), has held that personal jur-

---

he was a Winthrop creditor. It is inconclusive on the issue of personal jurisdiction because it does not show how the debtor-creditor relationship was created. At best, it is a foundation for development of Copeland's contacts but it would not be dispositive. Attachment 1, the Shaheen memorandum, is subject to the same objections as the Shaheen portion of the McLaughlin affidavit and could not be considered on the jurisdiction question. Attachment 2, the draft complaint McLaughlin gave Veasey, contains nothing which indicates that the defendants are subject to Maryland long

arm jurisdiction and even if it did, its allegations could not be taken as true on a motion to dismiss for lack of personal jurisdiction. Exhibit C, the Receiver's Application to Issue Certification of Indebtedness, indicates that Copeland made a $10,000 loan to Winthrop. It has the same problems as Exhibit A and does not aid resolution of the jurisdiction issue. That Exhibit D, the District of Columbia Bar letter, exists is probably not in dispute, but the letter fails to demonstrate or suggest that in personam jurisdiction over the defendants is present in this case.

isdiction in an action alleging abuse of process, malicious prosecution, false imprisonment, and defamation may be found under subsection (b)(1), without reference to subsections (b)(3) or (b)(4) which specifically relate to suits involving tortious injury.[2] Veasey is the only one of the defendants who may have transacted any business in Maryland sufficient to give the court jurisdiction [3] under subsection (b)(1), and the transactions would be those associated with the February 21, 1975 negotiation session in Baltimore.[4] Because the reach of subsection (b)(1) is coextensive with the limits of due process, *Piracci v. New York City Employees' Retirement System*, 321 F.Supp. 1067, 1070 (D.Md.1971); *Mohamed v. Michael*, 279 Md. 653, 370 A.2d 551, 553 (1977), the court must determine whether Veasey purposefully availed himself of the privilege of conducting activities within Maryland sufficient to invoke the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Mohamed*, 370 A.2d at 553–54.

In *Piracci v. New York City Employees' Retirement System*, 321 F.Supp. 1067 (D.Md.1971), the court faced the question of personal jurisdiction under the predecessor to subsection (b)(1). The standard used by Judge Thomsen was that adopted by the

Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968). After quoting from *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Sixth Circuit stated:

> From these two cases, three criteria emerge for determining the present outerlimits of *in personam* jurisdiction based on a single act. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381 (footnote omitted). Analysis of this case by the *Mohasco* standard is fully consistent with the Fourth Circuit holding in *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193 (4th Cir. 1976),[5] where the court held that "[a] single transaction is a sufficient contact to satisfy [the due proc-

2. The result is directly contrary to that of the Maryland Court of Special Appeals in *Zinz v. Evans & Mitchell Industries*, 22 Md.App. 126, 324 A.2d 140, 144, *cert. denied*, 272 Md. 751 (1974), where the court held that personal jurisdiction under subsection (b)(1) was limited to contract actions. *Mohamed* contains no reference to *Zinz* and the holdings appear to be irreconcilable. Faced with conflicting decisions, this court is bound by the pronouncement of the law as stated in *Mohamed*. *Cf. Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

3. Both Copeland and Junior apparently have had some business transactions in Maryland. Junior was an officer, director, and shareholder of the Winthrop Corporation before the Winthrop bankruptcy was filed. Copeland was a Winthrop creditor and a guarantor of loans to Winthrop. Section 6–103(a) limits suits under the long arm statute only to causes of action arising from, in this instance, transactions of business within Maryland. Although plaintiff contends that the alleged conspiracy and mailings underlying this suit were an effort by de-

fendants to hide their fraudulent activities, Copeland's or Junior's business transactions in Maryland are too attenuated from the mailings which gave rise to this suit to be considered under subsection (b)(1). They will be considered under the persistent course of conduct requirement of subsection (b)(4) however.

4. Veasey does state that he has had other contacts with Maryland which have been "insubstantial and sporadic." As with Junior's and Copeland's transactions, Veasey's other activities are too remote to be considered in connection with subsection (b)(1), but will be considered under subsection (b)(4).

5. The *Hardy* opinion is not explicit on whether jurisdiction was found under the portion of the South Carolina statute comparable to subsection (b)(1) or whether it was under the analog to subsections (b)(3) or (b)(4). Because the court spoke in terms of a "transaction" sufficient to satisfy due process, presumably jurisdiction was found under a subsection (b)(1) analysis.

ess] standard if it gives rise to the liability asserted in the suit." 531 F.2d at 195.

*Hardy* was a suit by a South Carolina plaintiff against a nonresident corporation which advertised in two national magazines and had made forty-two direct sales to South Carolina residents in the preceding ten years. The specific parachute which was the subject of litigation was sold in response to a telephone order from South Carolina to its office in Massachusetts. The Fourth Circuit concluded that South Carolina had a legitimate interest in providing its residents with a forum to seek redress against nonresident corporations shipping allegedly defective products into South Carolina and the nonresident corporation's due process rights were not violated by requiring it to defend a suit in South Carolina. 531 F.2d at 195.

Unlike the defendant in *Hardy,* Veasey is not a nonresident corporate shipper of goods being sued in a products liability action, but is instead an individual who attempted to settle a lawsuit by negotiations in Maryland on one occasion. Negotiations can constitute the basis for a finding of purposeful activity sufficient to satisfy due process. *See, e. g., Mohamed v. Michael,* 279 Md. 653, 370 A.2d 551, 554 (1977); *Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 215 A.2d 812, 823–24 (1966). The fact that the negotiations were unsuccessful is not dispositive because even nonprofit enterprises can fall within the ambit of "transacts any business" so long as they are purposeful activities. *Novack v. National Hot Rod Ass'n,* 247 Md. 350, 231 A.2d 22, 26 (1967). In *Mohamed* and *Van Wagenberg,* the negotiations were found to be "intensive" and "considerable" respectively and were more substantial than the single negotiation session involved here. Although in his initial affidavit Veasey states that, with

the exception of the single meeting on February 21, 1975, he has had no other contact with Maryland in connection with the Pappas claim, the letters included in Exhibit A to his affidavit undermine that assertion. The correspondence shows a continuing series of letters and telephone calls between Veasey and McLaughlin concerning the Pappas claim. It is apparent that the February 21, 1975 negotiation meeting in Baltimore was no chance occurrence and instead was a purposeful act by Veasey sufficient to meet the first prong of the *Mohasco* test. *See Novack v. National Hot Rod Ass'n,* 247 Md. 350, 231 A.2d 22 (1967); *Holfield v. Power Chemical Co., Inc.,* 382 F.Supp. 388, 392–94 (D.Md.1974); *cf. Bennett v. Computers Intercontinental, Inc.,* 372 F.Supp. 1082, 1085 (D.Md.1974); *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 260 A.2d 22, 26 (1969).

The facts show that *Mohasco's* second prong has been satisfied as well. In his affidavit, Veasey states that following the February 21, 1975 meeting, he returned to Wilmington and dictated the memorandum which, after editing, became the allegedly tortious letters. It is apparent that, for purposes of subsection (b)(1), this suit arises out of Veasey's activities in Maryland.[6]

The third prong of the *Mohasco* test has also been fulfilled. The citizenship of the plaintiff, the concomitant forum state interest, and the nexus between the transactions involved and Maryland are the substantial factors which permit the court to conclude that Veasey's acts or their consequences make the exercise of jurisdiction over him reasonable under subsection (b)(1). *See Davis v. St. Paul-Mercury Indemnity Co.,* 294 F.2d 641, 648 (4th Cir. 1961); *Holfield v. Power Chemical Co., Inc.,* 382 F.Supp. 388 (D.Md.1974). *Cf. Piracci, supra.*

---

**6.** A finding that this cause of action arises out of Veasey's activities associated with the February 21, 1975 meeting is consistent with the findings under subsection (b)(4) that McLaughlin's injury does not arise out of something done in Maryland. Subsection (b)(1) encompasses a broad group of activities within the concept of "transacts any business." The subsection (b)(4) discussion focuses on the situs of

the acts causing injury in order to determine the nature and quality of the contacts sufficient to satisfy due process. In this case, although jurisdiction is found over Veasey under subsection (b)(1) because of his transactions in Maryland, the plaintiff still must show fairly extensive contacts with Maryland under subsection (b)(4) because the injury arises out of the mailings in Delaware. *See* pp. 527–529 *infra.*

### Subsection (b)(3)

 Subsection (b)(3) consists of two distinct elements: (1) a tortious injury in Maryland which is caused by (2) an act or omission in Maryland.[7] In Count II, McLaughlin alleges that he has been libeled by the defendants. This count is premised upon Veasey's March 5, 1975 letter to Judge Schwartz and paragraph 9 of Veasey's February 21, 1975 memorandum to file. The Maryland Court of Special Appeals has held that no personal jurisdiction exists under subsection (b)(3) in a libel action where the allegedly defamatory material is mailed from a location outside the forum state. *Zinz v. Evans & Mitchell Industries,* 22 Md. App. 126, 324 A.2d 140, 144 (1974); *see St. Clair v. Righter,* 250 F.Supp. 148, 151 (W.D. Va.1966); *see also Margoles v. Johns,* 157 U.S.App.D.C. 209, 483 F.2d 1212, 1217–18 (1973) (telephone call). The letter was mailed from Delaware to Judge Schwartz and copies were sent to two other attorneys, all mailings taking place wholly within Delaware. A copy was also sent to McLaughlin in Maryland.[8] All of the causal acts occurred outside Maryland and, as in *Zinz,* no jurisdiction for Count II exists under subsection (b)(3).

 Under Maryland law, an action for civil conspiracy cannot be maintained in tort unless the acts committed, if done by one person, would constitute a tort. *Domchick v. Greenbelt Consumer Services, Inc.,* 200 Md. 36, 87 A.2d 831, 834 (1952); *Kimball v. Harman,* 34 Md. 407, 410–11 (1871). The act of conspiring is not tortious by itself, and a conspiracy is actionable only after the commission of an overt act which causes harm to the plaintiff. *Van Royen v. Lacey,* 262 Md. 94, 277 A.2d 13, 14–15 (1971); *Ragan v. Susquehanna Power Co.,* 157 Md. 521, 146 A. 758, 759 (1929); *Kimball v. Harman, supra.*

 In Count III, plaintiff alleges that the defendants' conduct constituted a malicious interference with his contract to render professional services. In order to recover on Count III, plaintiff must show that defendants committed

(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Beane v. McMullen,* 265 Md. 585, 291 A.2d 37, 47 (1972) (citing *Willner v. Silverman,* 109 Md. 341, 71 A. 962, 964 (1909)).

 Analytically, the question of jurisdiction for Counts I and III is the same as for Count II: was there a tortious act or omission in Maryland causing injury to McLaughlin? The act which is alleged to have occurred in Maryland is the February 21, 1975 meeting. The meeting was not the proximate cause of the alleged injury to the plaintiff. While it certainly was one of a preliminary number of acts leading to the mailings, if Veasey had returned to Wilmington and done nothing, there would be nothing upon which plaintiff could base a cause of action. *See Hoffman v. Halden,* 268 F.2d 280, 296–97 (9th Cir. 1959). While it is true that the suit arose out of the February 21, 1975 meeting, jurisdiction under subsection (b)(3) may be asserted only if there is a tortious act or omission in Maryland. *Zinz, supra.* In this case, the acts allegedly giving rise to liability occurred in Delaware and therefore no jurisdiction exists under subsection (b)(3).

### Subsection (b)(4)

 The exercise of personal jurisdiction under subsection (b)(4) is not depend-

---

7. Because Veasey is the only defendant alleged to have acted in Maryland, this discussion will not concern Copeland or Junior.

8. If the court were to find that a causal act had taken place in Maryland, there still would be no jurisdiction for Count II under subsection (b)(3) because plaintiff has not alleged that anyone other than himself received a copy of the letter in Maryland. Under Maryland law, the defamatory words must be published to a third party. *Geraghty v. Suburban Trust Co.,* 238 Md. 197, 208 A.2d 606, 609 (1965); *Fletcher v. High's Dairy Products,* 22 Md.App. 71, 321 A.2d 821, 824 (1974).

ent on the location of the allegedly tortious conduct. The determinative factor under this subsection is whether each of the defendants

> regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state.

*Annotated Code of Maryland,* Cts. & Jud. Proc. Art., § 6–103(b)(4) (1974). None of the defendants "does or solicits business" or "derives substantial revenue" from activities in Maryland so the question becomes: has each of the defendants engaged in a "persistent course of conduct" in Maryland which will enable the court to exercise personal jurisdiction over him? In order to answer the question, it is necessary to summarize each of the defendants' contacts with Maryland as shown through the affidavits and depositions.

### Veasey

Veasey, a Delaware citizen, has lived in Delaware for forty-three years and is a partner in Richardson, Layton & Finger, a Wilmington law firm. Veasey represented Junior in the Wilmington bankruptcy proceeding. During the course of that representation, Veasey met McLaughlin in Baltimore to discuss settlement of the Pappas claim. Veasey states that this single visit on February 21, 1975 was his sole visit to Maryland related to the Pappas claim. Veasey states that he is admitted to practice only in Delaware, and that he neither has an office nor practices law in Maryland. Other than the February 21, 1975 meeting, Veasey states in the last eighteen years he has had insubstantial and sporadic contact with Maryland clients regarding Delaware law or proceedings and that he has not derived substantial revenue from those clients. Veasey did have "a few brief appearances" in Baltimore regarding the Winthrop bankruptcy during the winter of 1970–71, but those appearances were not related to the Pappas claim which was not filed until November 1972. Other than the February 21, 1975 meeting, plaintiff has not

alleged that Veasey has had other contacts which would amount to a "persistent course of conduct" in Maryland.

### Copeland

Copeland, in his affidavit, states that he has been a citizen and resident of Delaware for forty-one years without interruption and that he neither maintains a business office nor transacts business in Maryland. He denies ever having published or caused to be published any document concerning the plaintiff and states that he has neither employed or retained Veasey, nor authorized him to act as his agent.

Plaintiff has alleged that Copeland had had considerably more contacts with Maryland than his affidavit suggests. Plaintiff's allegations, however, are not properly before the court because of the pleading infirmities discussed earlier in the motions to strike. Despite this, a brief review of the allegations is in order so that the discussion can be fully developed. Copeland was a creditor of Winthrop and allegedly had a provable claim in excess of $8.2 million against Winthrop. Copeland held all the issued and outstanding Winthrop common and preferred stock as collateral and other securities were pledged to him as security also. Copeland filed an application for the appointment of a receiver on November 12, 1970. Nothing in the pleadings reveals the extent to which Copeland, either personally or by an agent, had contacts with Maryland in his capacity as guarantor and creditor of Winthrop and, assuming such contacts existed, when they ceased, if ever.

### Junior

Although Junior did not file affidavits supporting his motion to dismiss, his deposition does disclose information concerning his Maryland contacts. The deposition, after discussion by counsel, was limited to events occurring after September 1, 1974. Since then, Junior has not owned or held an interest in real estate in Maryland. Junior did state that he has held either 37½ or 50 percent of the Winthrop stock, the actual

amount was disputed by the Winthrop trustee. Junior stated that he was not a Winthrop officer after September 1, 1974 and did not know whether he had been one before. Junior presumed that he was a Winthrop director but he did not know if the board of directors existed after the bankruptcy proceeding was filed. Junior did not receive any salary, loans, or dividends from Winthrop after September 1, 1974 and did not attend any directors' meetings or carry on any business for Winthrop after that date. Junior formerly held an interest in the Chevy Chase Partnership which was liquidated in May 1971. Except for Winthrop, Junior had no other relationship with any business entity in Maryland since September 1, 1974 and received no income from sources in Maryland.

Junior did enter into compromise or settlement agreements of the Winthrop claims against him, but they were entered into in Delaware with the approval of the Wilmington referee. Junior did not enter Maryland to settle the claims, although he was represented by counsel from outside Maryland who appeared on his behalf in Baltimore (presumably Veasey). Junior did not personally participate in the settlement negotiations and executed the agreement only after court approval.

In his affidavit, Liptz states that Junior was a Winthrop director and officer and that Junior personally carried on company business in Maryland during 1968 to 1970. These statements do not contradict Junior's answers in his deposition because of the September 1, 1974 time limitation.

■ In cases in which personal jurisdiction is alleged under subsection (b)(4), it is not necessary that the "persistent course of conduct" have a relationship to the alleged acts or omissions giving rise to the suit. The court in *Topik v. Catalyst Research Corp.,* 339 F.Supp. 1102 (D.Md.1972), found that subsection (b)(4) "authorizes jurisdiction over tortious causes of action causing injury anywhere by acts committed or omit-

ted anywhere provided that the defendant has a sufficient nexus with Maryland to satisfy the terms of the statute." 339 F.Supp. at 1106.[9] What constitutes a "sufficient nexus" depends, in part, on the relation of the course of conduct to the acts upon which liability is asserted.

The Fourth Circuit in *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 2652 (1971), stated:

> If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.' "

444 F.2d at 748 (emphasis original). In *Ratliff,* all parties were nonresidents and the court found the necessary contacts lacking. By contrast, plaintiff is a Maryland citizen and Maryland has some interest in the litigation. *See Davis v. St. Paul-Mercury Indemnity Co.,* 294 F.2d 641, 648 (4th Cir. 1961).

To restate the question in *Ratliff* terms: does McLaughlin's injury arise out of something done in Maryland? The answer is no. The only act in Maryland was the February 21, 1975 meeting. As mentioned in connection with subsection (b)(3), nothing which is alleged to have transpired at that meeting was the proximate cause of this suit. Had Veasey simply returned to Wilmington and not taken pen to paper (more precisely voice to dictaphone), plaintiff would have no cause of action because the elements of an overt act, a publication, and a willful act necessary to maintain actions for conspiracy, defamation, and tortious interference with business, respectively, would be lacking. Because McLaughlin's ability to institute a cause of action accrued only after Veasey mailed the letters, it is the mailings and not the meeting which are the acts giving rise to this suit. They were not

---

9. The activities amounting to a persistent course of conduct may occur before the tortious conduct, *Geelhoed v. Jensen,* 277 Md. 220,

352 A.2d 818, 824–25 (1976), or after, *Carter v. Massey,* M–76–472 (D.Md. filed Mar. 4, 1977), at 8–9.

"something done" in Maryland and the "fairly extensive" contacts required by *Ratliff* must be shown before the court may exercise jurisdiction.

In *Geelhoed v. Jensen,* 277 Md. 220, 352 A.2d 818 (1976), the plaintiff brought a tort action alleging criminal conversation. The basis for jurisdiction was subsection (b)(4) because no provable act of sexual intercourse occurred in Maryland. The Court of Appeals, consistent with *Ratliff,* recognized that more substantial contacts are required to satisfy due process when the cause of action arose outside the forum state. The *Geelhoed* court, relying on *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 445–49, 72 S.Ct. 413, 96 L.Ed. 485, *rehearing denied,* 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952), found that Jensen's living and working in Maryland for two years constituted a "continuous and systematic" course of conduct sufficient to satisfy due process. 352 A.2d at 825.

While Veasey's activities fall short of those of the defendant in *Geelhoed,* Exhibit A to Veasey's affidavit reveals six letters written by Veasey to McLaughlin. All of the letters were written in the four months preceding the February 21, 1975 meeting. When Veasey's letters and McLaughlin's numerous replies are placed in the context of settlement negotiations in an ongoing lawsuit, they, coupled with the February 21, 1975 meeting, certainly amount to "continuous and systematic" contacts with Maryland sufficient to give this court jurisdiction over Veasey under subsection (b)(4). Jurisdiction over Veasey exists under subsection (b)(1) because as *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir. 1976), makes clear, a single transaction may be sufficient to satisfy due process even though a defendant's acts may fall short of a persistent course of conduct. *See* p. 524, *supra.*

Unlike the defendants in *Perkins* and *Geelhoed,* and Veasey here, neither Junior nor Copeland have any activities approaching the necessary "continuous and systematic" contacts required by due process. Junior has had some prior contacts with Maryland, but those contacts had all but ceased by the filing of this action. Plaintiff relies on *Geelhoed* where the Court of Appeals found jurisdiction over a nonresident defendant whose contacts with Maryland had ceased two years prior to the filing of the suit because the defendant had been a Maryland resident at the time of the allegedly tortious conduct. 352 A.2d at 826. *Geelhoed,* on this point, is distinguishable from the facts of this case.

First, the special interest Maryland has in domestic relations is lacking. Second, the element of foreseeability present in *Geelhoed* is missing here because the Pappas claims were against Junior in the Wilmington bankruptcy proceeding and were connected only tangentially to Junior's activities as a Winthrop officer and director. Finally, Junior's voluntary contacts with Maryland ceased at least as early as September 1, 1974 and perhaps as early as November 10, 1970. Junior's contacts with Maryland have not been continuous and systematic and jurisdiction may not be exercised over him under subsection (b)(4).

Of the defendants, Copeland has the fewest contacts of all. His only substantial contact with Maryland was as a Winthrop creditor who filed an application for appointment of a receiver. Plaintiff has not produced any credible evidence and the file does not reveal any facts which would support a finding of continuous and systematic contacts by Copeland and would subject him to jurisdiction under subsection (b)(4).

If the court were to decide that the February 21, 1975 meeting was the causal act, and apply a less stringent standard than that of *Ratliff,* this would at best extend jurisdiction to Junior. Veasey is subject to jurisdiction in any event. Junior's prior associations with Winthrop, the Chevy Chase Partnership, together with McLaughlin's residency in this state would permit the court to exercise its jurisdiction over Junior.

Copeland is an altogether different matter. He was neither an active participant in settlement negotiations nor an officer or

director of the bankrupt Maryland corporation. Copeland was a guarantor and creditor of Winthrop, but the existence of those obligations standing alone even with the conspiratorial gloss given them by plaintiff is insufficient to qualify as a persistent course of conduct within Maryland which would sustain a finding of jurisdiction over Copeland under subsection (b)(4).

### Subsections (b)(2), (b)(5), and (b)(6)

■ As previously mentioned, none of these subsections provides a basis for the court to exercise jurisdiction over any of the defendants. Subsection (b)(2), by its terms, relates only to contract actions and has no application to the alleged facts of this case. Nor does plaintiff make any showing sufficient to bring the defendants within the ambit of subsection (b)(6), which is a specialized subsection relating to insuror and surety relationships. *Bennett v. Computers Intercontinental, Inc.,* 372 F.Supp. 1082, 1085 (D.Md.1974); *see* Foster, *Judicial Economy; Fairness and Convenience of Place of Trial: Long-Arm Jurisdiction in District Courts,* 47 F.R.D. 73, 85–86 n. 37 (1968). Plaintiff alleges that both Copeland and Junior had an "interest in, used, or possessed real property" in Maryland and therefore the court has jurisdiction over them under subsection (b)(5). In his deposition, Junior stated that he has not owned any real property in Maryland since September 1, 1974. Copeland does not refute the allegation in either of his two affidavits. Even if the court assumes that Copeland and Junior have an interest in, use or possess real property in Maryland, subsection (b)(5) does not confer jurisdiction over them. Jurisdiction under subsection (b)(5) is limited to causes of action having some connection with the alleged property interest. *Annotated Code of Maryland,* Cts. & Jud.Proc.Art., § 6–103(a); *see, e. g., McGinnis v. Rogus,* 262 Md. 710, 279 A.2d

459, 472 (1971); Auerbach, *The "Long Arm" Comes to Maryland,* 26 Md.L.Rev. 13, 44–45 (1966); *Foster, supra,* 47 F.R.D. at 85–86 n. 37. It is apparent that subsection (b)(5) is not a source of jurisdiction because this suit arises out of the defendants' alleged acts which, even if proven, are not connected with any property interests that the defendants may have in Maryland.

As the foregoing analysis shows, the court has jurisdiction over Veasey under subsections (b)(1) and (b)(4) and may have jurisdiction over Junior under subsection (b)(4). No jurisdiction exists over Copeland under any of the subsections, no matter how favorably to plaintiff the pleadings are construed except perhaps under the conspiracy or agency theories of jurisdiction to be discussed.

### The Conspiracy Theory of Jurisdiction

The foregoing discussion addressed the question of long arm jurisdiction over the defendants based solely upon their personal contacts with Maryland. Having found that no one subsection or combination of subsections authorizes the exercise of personal jurisdiction over all three of the defendants, the court must address the intrinsically more difficult question: is the exercise of jurisdiction over all defendants proper under either a conspiracy theory of jurisdiction or an agency theory to be discussed later.

Perhaps the best method to begin the analysis is to state the conspiracy thesis of jurisdiction:

(1) Subsection (b)(4)[10] permits the exercise of jurisdiction over an individual if he causes tortious injury by an act or omission outside Maryland if he engages in a persistent course of conduct within Maryland.[11]

(2) A conspiracy coupled with an overt act is tortious.

---

10. If subsection (b)(1) were substituted for subsection (b)(4), the relevant inquiry would be whether the individual had transacted any business in Maryland. Subsection (b)(4) is used only as an example because either of the subsections could apply. Subsection (b)(3) is not applicable for the reasons stated earlier.

11. Only the "persistent course of conduct" portion of subsection (b)(4) need be considered because nothing suggests that any of the defendants regularly does or solicits business in or derives substantial revenue in Maryland.

(3) When individuals join in a conspiracy the acts of one conspirator are attributable to each co-conspirator.[12]

(4) Veasey's[13] mailings of the letters were overt acts in furtherance of the conspiracy.

(5) Veasey's acts are attributable to Copeland and Junior as co-conspirators and they are, therefore, subject to the jurisdiction of the court under subsection (b)(4).

The plaintiff has the burden of alleging and proving the facts justifying the exercise of jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Hare v. Family Publications Service, Inc.*, 342 F.Supp. 678, 682 (D.Md.1972) (*Hare II*). When determination of the jurisdictional facts is intertwined with and may be dispositive of questions of ultimate liability, courts have held that the plaintiff need only show "threshold" or "prima facie" jurisdiction, *see Holfield v. Power Chemical Co., Inc.*, 382 F.Supp. 388, 390 (D.Md.1974); *Hare v. Family Publications Service, Inc.*, 334 F.Supp. 953, 959–60 (D.Md.1971) (*Hare I*); *Leasco Data Processing Equip. Corp. v. Maxwell*, 319 F.Supp. 1256, 1262 (S.D.N.Y. 1970). To require a more substantial showing in a case alleging a civil conspiracy would be, in the words of one court "harsh, if not impossible" in view of the difficulties of pleading and proving a conspiracy. *Mandelkorn v. Patrick*, 359 F.Supp. 692, 696 (D.D.C.1973); *see Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 193 n. 2 (D.C.Pa.1974). The problems associated with requiring a more substantial showing are exemplified by *Smith v. Sperling*, 354 U.S. 91, 93–98, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *see Hare I*, 334 F.Supp. at 959.

It should be noted that one court has rejected the conspiracy theory as a basis for establishing personal jurisdiction. *I.S. Joseph Co., Inc. v. Mannesmann Pipe & Steel Corp.*, 408 F.Supp. 1023, 1024 (D.Minn.1976). Another court, citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), has taken an extremely liberal approach which permits the exercise of jurisdiction under a conspiracy theory upon a tenuous allegation of conspiracy. *National Van Lines, Inc. v. Atlas Van Lines, Inc.*, 406 F.Supp. 1087, 1089 (N.D.Ill.1975). Most courts have taken a middle ground on the conspiracy theory, but their articulation of what type of showing will satisfy the threshold or prima facie jurisdiction requirement has varied considerably depending on the court and the peculiar factual allegations and pleadings in each case.

The leading case on the conspiracy theory of jurisdiction is *Leasco Data Processing Equipment Corp. v. Maxwell*, 319 F.Supp. 1256 (S.D.N.Y.1970) (*Leasco I*), a securities fraud suit under the Securities Exchange Act of 1934. Kerman, one of the individual defendants, challenged the district court's jurisdiction over him under the New York long arm statute based solely on his participation in the alleged conspiracy. The district court found that

> mere allegations of conspiracy and even the presence of one co-conspirator within the jurisdiction, do not give jurisdiction over all the alleged co-conspirators.

319 F.Supp. at 1261. *Accord, Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir. 1975); *Mandelkorn v. Patrick*, 359 F.Supp. 692, 696 (D.D.C.1973); *Turner v. Baxley*, 354 F.Supp. 963, 976 (D.Vt.1972). The court held that it did not have personal jurisdiction over the defendant because the plaintiff had failed to satisfy due process requirements of

> a factual showing of a conspiracy and also of a connection between the acts of the conspirator who was present in the

---

**12.** *Checket-Columbia Co. v. Lipman*, 201 Md. 494, 94 A.2d 433, 436 (1953); *Western Maryland Dairy, Inc. v. Chenowith*, 180 Md. 236, 23 A.2d 660, 664 (1942); *see Gai Audio of N. Y., Inc. v. Columbia Broadcasting System, Inc.*, 27 Md.App. 172, 340 A.2d 736, 749 (1975).

**13.** The thesis would be the same if either Copeland or Junior were the actors instead of Veasey. Veasey is used in this paragraph because he committed the overt acts alleged to be in furtherance of the conspiracy.

jurisdiction and the conspirator who was absent.

319 F.Supp. at 1261.

On appeal, the Second Circuit vacated the dismissal of Kerman because the conflicting affidavits raised "too many unresolved questions of fact" to make dismissal proper without further discovery. *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1342–44 (2d Cir. 1972) (*Leasco II*). Distinguishing between the showing necessary to support a finding of liability and that necessary for a court to exercise jurisdiction, Judge Friendly, writing for the court, stated:

> We believe, moreover, that attaining the rather low floor of foreseeability necessary to support a finding of tort liability is not enough to support *in personam* jurisdiction. The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him.

468 F.2d at 1341 (footnote omitted). On remand, the Second Circuit's premonition that discovery "may do little to advance plaintiffs' case" was borne out, and the district court once again dismissed Kerman. *Leasco Data Processing Equip. Corp. v. Maxwell*, 68 F.R.D. 178 (S.D.N.Y.1974) (*Leasco III*).

The district court held that the proof failed to show that Kerman had done any purposeful acts which he knew or had reason to know would result in the agreement which gave rise to the suit. 68 F.R.D. at 182–84.

In *Socialist Workers Party v. Attorney General*, 375 F.Supp. 318 (S.D.N.Y.1974), the plaintiffs attempted to assert personal jurisdiction over three defendants under the conspiracy theory. The court contrasted the posture of its case with the situation in *Leasco I* where the plaintiffs submitted detailed allegations and evidentiary facts tending to connect Kerman to the alleged conspiracy. The court held that there were no allegations or evidence of specific facts connecting the defendants with the alleged conspiracy in New York and refused to permit discovery on the jurisdiction issue because the plaintiffs' invocation of the long arm statute was "based on nothing but speculation and conjecture." 375 F.Supp. at 325. *See Chemical Bank v. World Hockey Ass'n*, 403 F.Supp. 1374, 1379 (S.D.N.Y. 1975).

"Threshold" jurisdiction was found in *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307 (S.D.N.Y.1975). There the plaintiff was able to present definite evidentiary facts connecting the defendant to the New York transactions. 398 F.Supp. at 313. The defendant contested the court's jurisdiction but did not dispute the facts contained in plaintiff's affidavit, arguing that the facts did not amount to purposeful activity. *Id.* The court denied the motion to dismiss without prejudice to the defendant's right to renew the motion at trial. 398 F.Supp. at 314–15; *see Smith v. Sperling, supra; Hare I, supra.*

In *Turner v. Baxley*, 354 F.Supp. 963 (D.Vt.1972), the principal shareholder of two corporations alleged that the attorney generals of twenty-six states and the Council of Better Business Bureaus, Inc. conspired to induce third parties to breach their contracts with the plaintiffs' "Dare To Be Great" operations. The court, applying the *Leasco II* test, dismissed the nonresident defendants for lack of jurisdiction because the complaint did not allege that those defendants knew or should have known that their actions would have an effect in Vermont. 354 F.Supp. at 976–77. The court also found that no such inference could be drawn from the pleadings. *Id.* Recognizing the maintenance of a conspiracy action in every forum in which an overt act was committed "would be an open invitation to forum shopping and harassment of defendants by unscrupulous litigants," the court balanced the equities to the parties and found that no undue hardship would be imposed on plaintiffs if they were forced to bring individual actions in every state where the plaintiffs did business. 354 F.Supp. at 977–78.

The *Leasco I* test which requires a "factual showing of a conspiracy" has been crit-

icized in *Mandelkorn v. Patrick*, 359 F.Supp. 692 (D.D.C.1973). The court agreed that the presence of one conspirator will not give rise to jurisdiction over all the co-conspirators. 359 F.Supp. at 696. The court did not insist that there be a "factual showing of a conspiracy" because of the "difficulties of pleading and proving conspiracy." Judge Robinson chose to apply the Ninth Circuit standard as stated in *Hoffman v. Halden*, 268 F.2d 280 (9th Cir. 1959):

> If sufficient allegations appear of the acts of one defendant among the conspirators, causing damage to plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during its course, in furtherance of the objects of the conspiracy, with the requisite purpose and intent and under color of state law, then all defendants are liable for the acts of the particular defendant under the general principle of agency on which conspiracy is based.

268 F.2d at 295–96 (footnote omitted). Although Judge Robinson is correct in identifying the peculiar problems associated with conspiracy actions, his reliance on the *Hoffman* opinion quoted above is inappropriate because as Judge Friendly acknowledged the standards for personal jurisdiction and liability are fundamentally different. *Leasco II*, 468 F.2d at 1341. Judged by the *Hoffman* criteria, Judge Robinson found no injustice in requiring the nonresident defendants to submit to suit in the District of Columbia.[14] The court found it significant that the defendants had not denied either the existence of or their participation in the alleged conspiracy. 359 F.Supp. at 695. The court explicitly stated that, for the purposes of the motion, it had taken the uncontroverted allegations as true, and that the situation would have been quite different if the defendants had denied the allegations. 359 F.Supp. at 396–97.

The application of the principles of the cases discussed above to the present case leads the court to conclude that personal jurisdiction exists over Junior but not over Copeland. As discussed earlier, Veasey is subject to jurisdiction under subsections (b)(1) and (b)(4). Junior argues that jurisdiction over him may be asserted only if the court finds that it has jurisdiction over Veasey. The discussion to follow concerning Copeland will show that Junior's argument is incorrect and that jurisdiction, in fact, does not exist over Copeland, the finding of jurisdiction over Veasey notwithstanding.

■ Junior has not denied by affidavit or otherwise the existence of the alleged conspiracy and he is, therefore, in the same posture as the defendants in *Mandelkorn* and *Ghazoul*. Junior's deposition does not controvert the allegations of the conspiracy either, although it does contest by inference the invocation of jurisdiction under the long arm statute. The fact that no jurisdiction exists under the long arm statute directly does not prevent a threshold finding of jurisdiction under the conspiracy theory. *See Mandelkorn, supra; Ghazoul, supra.*

■ Copeland, however, has denied explicitly that he has ever engaged in a conspiracy with either or both of the two defendants. The *Mandelkorn* and *Ghazoul* holdings are consequently inapplicable to Copeland. The question is whether plaintiff has made the necessary "factual showing of a conspiracy" and a connection between Veasey's actions and Copeland. *See Leasco I.* A close reading of the complaint shows that plaintiff has alleged a conspiracy did exist. Plaintiff has not alleged any facts or presented any evidence which refute Copeland's denial of any participation in the conspiracy. Put into the language of *Leasco II*, plaintiff has not presented anything which would support a finding that Copeland knew or should have known that his activity would have an effect in Maryland. At least as to Copeland, plaintiff has done no more than to place a conspiratorial

---

14. The plaintiffs in *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144 (D.D.C.1976), citing *Mandelkorn*, argued that jurisdiction existed under the conspiracy theory. The court, however, reserved ruling on the motions to dismiss pending discovery by plaintiffs. 410 F.Supp. at 151.

coloration on Copeland's business activities. While this may be more than the allegations in *Mandelkorn* and *Ghazoul*, the plaintiff faced with affidavits contesting personal jurisdiction must show something to connect Copeland to Veasey's activities. The response of the court in *Socialist Workers Party* is particularly appropriate:

> Surely a plaintiff must make some specific factual showing in order to assert [personal] jurisdiction. A plaintiff cannot be permitted to effect service of process on an out-of-state defendant on the mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds for jurisdiction. Basically, that is what has happened in the present case.

375 F.Supp. at 325. Nothing which is before the court provides any basis for a finding of personal jurisdiction under a conspiracy theory over Copeland, beyond the mere allegation of a conspiracy, and that is clearly insufficient to require Copeland to defend this suit here.

### The Agency Theory of Jurisdiction

■ The agency theory of jurisdiction is not fundamentally different from the conspiracy theory just discussed.[15] As with the conspiracy, the determination of jurisdiction is tied to the proof of liability and again plaintiff need only show "threshold" jurisdiction. Whether an agency relationship is created or not is determined by the relations of the parties as they exist by agreements or acts. Ultimately, the question is one of intention. *Hare v. Family Publications Service, Inc.*, 342 F.Supp. 678, 682 (D.Md.1972); *Ramsburg v. Sykes*, 221 Md. 438, 158 A.2d 106, 108 (1960).

■ Copeland, by affidavit, has denied any suggestion that Veasey was his agent. Plaintiff has shown nothing beyond his allegation that Veasey acted on Copeland's behalf, which will not support a finding of jurisdiction. Without a doubt, this is not a case in which the court would expect to find a traditional employer-employee or principal-agent relationship. On the other hand, the plaintiff must come forward with some threshold showing indicating that Veasey wrote and mailed the letters while acting as Copeland's agent. Plaintiff has not done so and, as the court in *Hare II* stated, "the agency must be based upon more than mere supposition or wishful thinking" by the plaintiff. 342 F.Supp. at 683. In the face of Copeland's categorical denial of an agency relationship with Veasey, plaintiff has failed to bring forward any facts supporting his allegation and the court must conclude that it has no jurisdiction over Copeland under an agency theory.

### Transfer to the United States District Court for the District of Delaware

Copeland has moved, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Transfer is discretionary with the court and if jurisdiction over the defendants were present the court would deny the motion to transfer. While it is true that all of the defendants live in Delaware, the inconvenience and expense of travel between Wilmington and Baltimore are not a substantial consideration and absent other circumstances, plaintiff's choice of forum would be entitled substantial weight. *SEC v. Harwyn Publishing Corp.*, 232 F.Supp. 274, 277 (S.D.N.Y.1964).

The court does not have jurisdiction over all of the defendants and the cases are in

---

**15.** Only jurisdiction over Copeland will be discussed here because the other defendants are subject to jurisdiction. Junior is subject to jurisdiction under an agency theory also because he has not denied an agency relationship between Veasey and himself. If anything, the argument for jurisdiction under this theory is stronger than that under the conspiracy theory. Junior retained Veasey to represent him in the Wilmington bankruptcy proceeding. The question to be answered is whether Veasey's conduct was within the scope of the agency. Because Junior has not denied the agency or asserted that Veasey acted outside its scope, the court will assume for the purposes of the motion that Veasey acted within the scope of the relationship. *See Hare II, supra.*

conflict whether the court has the power to transfer under section 1404(a) when jurisdiction is lacking. *Compare United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964), *with United States Ry. Equip. Co. v. Port Huron & Detroit RR*, 58 F.R.D. 588, 591–92 (N.D.Ill.1973), *rev'd on other grounds*, 495 F.2d 1127 (7th Cir. 1974); *Wilson v. Kansas City Southern Ry. Co.*, 101 F.Supp. 56, 59–61 (W.D.Mo.1951); *Burns v. Chubb*, 99 F.Supp. 581, 582 (E.D.Pa.1951). Whether or not the court may transfer pursuant to section 1404(a) need not be decided because section 1406(a) of Title 28 provides an alternative source of power to transfer and, in the factual context of this case, the proper resolution of both the motions to dismiss and the motion to transfer.

▮ Section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Transfer under section 1406(a) is permitted whether or not the district court has jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Veasey argues that the court need not consider transfer under section 1406(a) because if the case were dismissed McLaughlin would be free to sue in Delaware. While Veasey's contention may have been true when his motion was filed, it appears that the Delaware's two-year statute of limitations would bar part, if not all, of McLaughlin's claim.

▮ Plaintiff has been unable to show that "threshold" personal jurisdiction exists over Copeland. In view of this deficiency, transfer of this action to the United States District Court for the District of Delaware is particularly appropriate because the three defendants are Delaware citizens and venue is proper under 28 U.S.C. § 1391(a). While transfer to Delaware undoubtedly will cause plaintiff some minimal hardship, this inconvenience is outweighed by the substantial advantage of having the case tried by a court whose jurisdiction is certain.

Accordingly, it is this 7th day of June, 1977, ORDERED that the Clerk of the United States District Court for the District of Maryland transfer *McLaughlin v. Copeland et al.*, 435 F.Supp. 513, to the United States District Court for the District of Delaware.[16]

---

**16.** This Memorandum and Order is addressed only to the question of the court's jurisdiction over the defendants. It would be inappropriate for the court to consider any of the substantive issues raised by the complaint and indeed the court is without the power to do so. *Brady v. Alderman*, No. 76–1680, at 3–4 (4th Cir. filed May 10, 1977); *Arrowsmith v. United Press International*, 320 F.2d 219, 221 (2d Cir. 1963). The court does note, however, that the Maryland Court of Special Appeals in *Kerpelman v. Bricker*, 23 Md.App. 628, 329 A.2d 423 (1974), held that an attorney who wrote a letter to the chairman of the bar association grievance commission charging an attorney with violations of the Canons of Ethics was protected by an absolute privilege in a subsequent libel action based upon the contents of the letter. 329 A.2d at 425–27. *See also United States v. Hurt*, 177 U.S.App.D.C. 15, 543 F.2d 162, 167 (1976).

The court has not addressed Veasey's motion to strike certain allegations in the complaint. Because this case is being transferred, the court will not decide the motion and will leave it as a matter for resolution by the district judge to whom this case is assigned in Delaware.